## TWIGGS v. WINGFIELD et al.

1. A public officer takes his office cum onere, and so long as he retains it he undertakes to perform its duties for the compensation fixed, whether such duties be increased or diminished. He can not claim extra compensation for the performance of additional work within the line of his official duties, unless additional compensation is provided by competent authority.

2. A member of the flood commission of the City of Augusta can not legally contract with the commission for the performance of duties which, as a member of such commission and as commissioner of public works for the City of Augusta and ex-officio city engineer, it is made his official duty to superintend and supervise on behalf of the city. Such a· contract is contrary to public policy and illegal. The court erred in refusing an interlocutory injunction.

No. 599.    APRIL 11, 1917.

Petition for injunction.    Before Judge Hammond. ' Richmond superior ·court.    September 8, 1917.

*Pierce Brothers,* for plaintiff.

*C. Henry Cohen* and *Isaac S. Peebles Jr.,* for defendants.

GEORGE, J.    Albert J. Twiggs, a citizen and taxpayer of the City of Augusta, filed a petition for injunction against the City Council of Augusta, H. H. Morris, its treasurer, and Nesbit Wing-

field, commissioner of public works and ex-officio a member of the flood commission of that city. The purpose of the petition was to restrain the City Council of Augusta and its treasurer from paying to Nesbit Wingfield a salary of $2,400 per annum as engineer for the flood commission of the city, and to restrain him from receiving and collecting this salary. The case was submitted upon the petition and the answers, with the exhibits attached. An interlocutory injunction was denied, and the plaintiff excepted.

The facts are not in dispute. A disastrous flood visited the City of Augusta in August, 1908. The city council, by ordinance adopted on September 28, 1908, created a flood commission for the purpose of affording protection against the recurrence of such disasters. Under this ordinance the sum of $5,000 was appropriated, to be expended by the commission in carrying out this purpose. In April, 1909, the city council, by ordinance, so enlarged the powers of the flood commission "that the flood commission heretofore created shall have full power and authority to adopt a plan for the protection of the City of Augusta and County of Richmond from damage by floods and freshets, and to execute said plan in such manner and upon such terms as may seem proper and advantageous to the said commission; that said commission is hereby vested with power and authority forthwith to provide for the construction of any embankments, levees, or other means of protection to said city and county from floods and freshets at and along the river front of said city, at and along the banks of the canal now owned and operated by the City Council of Augusta in said city and county, to raise and strengthen the said banks of the said canal, and generally to adopt and execute such plan or plans of protection against floods as may be advantageous and feasible." This ordinance appropriated $100,000 for the purpose of carrying out the powers and executing the plans therein provided. By the ordinance the commission was composed of the mayor, the city attorney, commissioner of public works and ex-officio city engineer, and three members of council. The commission employed Nesbit Wingfield, the commissioner of public works and ex-officio city engineer and ex-officio a member of the flood commission, "to carry on this work of preparing plans and specifications and advertising bids that were incident and necessary to the work of affording protection to the City of Augusta," and provided that

he be paid a salary of $150 per month for such services, which salary was later increased to $200 per month. After the passage of the ordinance set out above, the General Assembly passed an act creating what is termed the flood commission of the City of Augusta. Acts 1909, p. 556, sec. 3. This act eliminated the members of council, but named as members of the flood commission three members of the then City Council of Augusta, and expressly retained as members "ex-officio the mayor of the City of Augusta, and ex-officio the city attorney of the City of Augusta, and ex-officio the commissioner of public works of the City of Augusta." The act expressly repealed "such portions of the charter of said city and such portions of the ordinances of said city, and all laws and parts of laws in conflict" therewith. Section 347 of the code of ordinances of the City of Augusta is as follows: "Council shall elect an officer to be known as the commissioner of public works, who shall be a skilled engineer and practical surveyor, and any competent person, whether a resident of the city or not, shall be eligible; the commissioner of public works shall be ex-officio city engineer." Section 348 of the city code provides: "The commissioner of public works shall have (subject to the direction of the mayor and the ordinances of council) the supervision, management, and charge of all public works of the city, now or hereafter existing, as regards their construction, maintenance, and operation; and shall let out all public work by contract whenever in his judgment the same is for the best interest of the city." Section 349 of the city code is: "With the consent of the mayor and finance committee, and the chairman of the committee whose department will be affected, he shall fix the number of assistants, clerks, inspectors, overseers, and laborers necessary for the public works." Paragraph 8 of the plaintiff's petition, which was formally admitted by the defendants to be true, alleged: "That under and by virtue of an ordinance of the City Council of Augusta, approved January 15, 1907, the salary of the commissioner of public works and ex-officio engineer of the City of Augusta was fixed at thirty-six hundred ($3,600) dollars per annum, and such sum is in full of all compensation for all services rendered said City Council of Augusta by said Nesbit Wingfield, Esquire, either as commissioner of public works, ex-officio city engineer or ex-officio member of the flood commission." No ordinance of said city and

no act of the State legislature provided any salary for any of the members of the flood commission. It is insisted that the ordinance creating the flood commission did not authorize it to provide for the payment of a salary to one of its members as engineer, and that the only salary provided by the City Council of Augusta for the commissioner of public works, ex-officio city engineer, and ex-officio member of the commission was the sum of $3,600 per annum. It is contended on behalf of the defendants, that the salary paid to Mr. Wingfield was authorized by the ordinance of April, 1909, which by its terms enlarged the powers conferred upon the commission under the ordinance of September, 1908; that if this were not so, the City Council of Augusta and the flood commission were practically one and the same; and that inasmuch as the monthly salary was audited by the clerk of council, and approved by the mayor of the city, the chairman of the finance committee, and the chairman of the accounts committee, before payment by, the treasurer, the payment of the salary was legally authorized by the city council.

1. "It is a well-settled rule that a person accepting a public office, with a fixed salary, is bound to perform the duties of the office for the salary. He cannot legally claim additional compensation for the discharge of these duties, even though the salary may be a very inadequate remuneration for the services. Nor does it alter the case that by subsequent statutes or ordinances his duties within the scope of the charter powers pertaining to the office are increased, and not his salary." 1 Dill. Mun. Cor. (5th ed.), § 426. The defendants in their answer say that the passage of the act of the legislature (Acts 1909, p. 556) was merely precautionary. There is little room to doubt this conclusion. The City of Augusta was incorporated in 1798. Mar. & C. Dig. (1800), 136. The powers conferred upon the corporation by section 3 of the act of incorporation are sufficiently comprehensive and broad to give to the municipality the right to create the flood commission and to protect the city from floods and freshets. This being true, it necessarily follows that the duties imposed upon the defendant Wingfield as ex-officio a member of the flood commission are duties within the scope of the charter powers of the city pertaining to the office of commissioner of public works and ex-officio city engineer, as created by the City Council of Augusta. Under

section 348 of the city code of ordinances it is the duty of the commissioner of public works to have charge of all the public works of the city, then and thereafter existing, with regard to their construction, maintenance, and operation. "Not only has an officer, under such circumstances, no legal claim for extra compensation, but a promise to pay him an extra fee or sum beyond that fixed by law is not binding, though he renders services and exercises a degree of diligence greater than could legally have been required of him." 1 Dill. Mun. Cor. (5th ed.), § 427. Citation of authority is hardly necessary to sustain the general doctrine stated in the text from which we have just quoted. A salaried officer of a public corporation has no claim for compensation extra his salary, on the ground that the duties of his office have been increased or are new duties added since the salary was fixed. People *v.* New York Supervisors, 1 Hill (N. Y.), 362; Wendell *v.* Brooklyn, 29 Barb. (N. Y.), 204; Covington *v.* Mayberry, 9 Bush (Ky.), 304; Andrews *v.* Pratt, 44 Cal. 309. "A public officer holds his office cum onere, and undertakes to perform the duties of the office for the compensation stipulated, whether such duties be increased or diminished; and such compensation must be by virtue of statutory warrant." Board of Commissioners *v.* Buchanan, 21 Ind. App. 178 (51 N. E. 939). "An alderman who is ex-officio a supervisor is not entitled to salary for services as supervisor." Billings *v.* New York, 68 N. Y. 413. A public officer, whether of a State, county, or municipality, is not entitled to and can not legally receive extra compensation for services performed in the line of his official duties. If the duties imposed upon the flood commission of the City of Augusta are not in line with the official duties of the commissioner of public works and ex-officio city engineer, as defined by the ordinance of the city, it is difficult to conceive of precisely the kind and character of work that would fall within the line of his official duties. Generally, a public official voluntarily retains his office. When the salary is inadequate he is at liberty to resign. To allow an increase in his salary with every increase of his official duty would work an intolerable mischief. As Mr. Dillon points out, "it requires but little ingenuity to run nice distinctions between what duties may and what may not be considered strictly official; and if these distinctions are much favored by courts of justice, it may lead to great abuse." § 426, supra. There is no suggestion

that the services of Mr. Wingfield have not been faithfully and efficiently performed. This, however, is beside the question. Conceding that he is a most capable official, it is precisely for that reason that he was first selected commissioner of public works and ex-officio city engineer, and for precisely the same reason he was made ex-officio a member of the flood commission. Although the flood commission has broad and ample power and discretion in the performance of its duties and in the expenditure of the money appropriated for its uses, its agreement to pay one of its own members a salary for services falling within the line of the official duty of such member, both as a member of the flood commission and as an officer of the city, is beyond its power. The salary of the commissioner of public works, if inadequate under the present conditions, and in view of the additional work placed upon him, must be increased by an ordinance of the City Council of Augusta, and can not be added to by any resolution of a committee or subsidiary body of which he is a member. State v. Brewer, 59 Ala. 130; Johnson v. Winfield, 75 Kan. 832 (89 Pac. 657); McQuil. Mun. Cor. § 528(2); Evans v. Trenton, 24 N. J. L. 764.

2. If it be conceded that the services performed by Mr. Wingfield as engineer for the flood commission were not within the line of his official duty as a member of the commission or as commissioner of public works for the City of Augusta, but that in rendering such services he was acting in the capacity of a servant or employee of the flood commission, the case for the defendants is not strengthened. To quote again from Mr. Dillon (§ 772): "It is a well-established and salutary doctrine that he who is intrusted with the business of others cannot be allowed to make such business an object of pecuniary profit to himself. This rule does not depend on reasoning technical in its character, and is not local in its application. It is based upon principles of reason, of morality, and of public policy. . . The application of the rule may in some instances appear to bear hard upon individuals who have committed no moral wrong; but it is essential to the keeping of all parties filling a fiduciary character to their duty, to preserve the rule in its integrity, and to apply it to every case which justly falls within its principle." The contract in the present case is executory. It was the duty of Mr. Wingfield, both as commissioner of public works and as ex-officio a member of the flood commission, to supervise and superintend the work to be done on

behalf of the city under the flood commission. He was employed by the commission "to carry on this work of preparing plans and specifications and advertising bids that were incident and necessary to the work of affording protection to the City of Augusta," and he is the one member of the commission, so far as the record discloses, who was peculiarly qualified to execute the work of the commission. Under the contract he therefore occupies the position of chief judge in his own case. While the act of 1872 (Acts 1872, p. 22) from which section 709 of the Code of 1895 was taken (omitted from the code of 1910) was declared unconstitutional because the act referred to more than one subject-matter (*Ayeridge* v. *Social Circle,* 60 *Ga.* 404), the principle announced in the text quoted above has been consistently followed in this State since the decision in *Harrison* v. *McHenry,* 9 *Ga.* 164 (52 Am. D. 435). In *Mayor &c. of Macon* v. *Huff,* 60 *Ga.* 221, 228, it was said: "So that the current of Georgia policy, both in legislative and judicial channels, runs steadily to one direction and to one point, that no man who is agent or trustee for another, whether a private or public agent or trustee, shall have the opportunity or be led into the temptation to make profit out of the business of others entrusted to his care, by bargaining with himself, directly or indirectly, in respect to that business." In that case Huff was the mayor of the City of Macon and ex-officio president of the council. While in office he contracted with council to lease the city park for five years; and, for an annual sum paid him, to fence, drain, and keep the park in repair for that period. It was held, "that, as it was his official duty as mayor to see to it that as contractor he discharged the duties of this executory and continuous contract for five years, public policy forbids that he take a contract which it is his official business to see faithfully performed, and that therefore the contract is illegal." The principle of the case was recognized at common law, and all legislative acts to the same effect are merely declaratory of the common law. See Smith *v.* Albany, 61 N. Y. 444; *Dorsett* v. *Garrard,* 85 *Ga.* 734, 738-9 (11 S. E. 768); *Hardy* v. *Gainesville,* 121 *Ga.* 327, 328 (48 S. E. 921). It follows that an injunction should have been granted.

    *Judgment reversed. All the Justices concur, except Fish, C. J., absent.*