BOARD OF LIGHTS & WATERWORKS *et al. v.* DOBBS *et al.*

1. Under the charter of the City of Marietta, as amended by the act of 1909 (Acts 1909, p. 1099), the mayor of that municipality can act not only as mayor, and receive the salary therefor, but may also be elected treasurer of the Board of Lights and Waterworks, of which he is ex officio a member, and receive the compensation fixed by the board for his services. There is no inhibition against one person holding both positions in a municipality, and receiving both salaries, when authorized by the charter.

2. The allegation that the salary fixed by the Board of Lights and Waterworks for treasurer of the board was excessive was not supported by proof.

3. The court did not err, under the facts of the case, in holding that Dobbs had such interest in the subject-matter of the suit as entitled him to maintain it; and it follows that any other parties who were taxpayers of the city could be added as parties.

4. The court erred in granting the injunction.

NO. 2036. JANUARY 14, 1921.

Injunction. Before Judge Blair. Cobb superior court. April 16, 1920.

E. P. Dobbs, a nonresident of the City of Marietta but alleging that he was a taxpayer of that city, brought a petition against the Board of Lights and Waterworks of that city and J. R. Brumby as mayor thereof, who as mayor was ex officio a member of the Board of Lights and Waterworks, to enjoin against the payment of a salary to Brumby out of the moneys of the board, or any compensation for his services as superintendent, manager, or otherwise in such connection; and to enjoin him from receiving any of such salary. It was alleged, in the petition as amended, that the board had entered into an illegal contract whereby it agreed to pay Brumby $200 per month as superintendent or man-

ager of its waterworks and electric-light plant; that the compensation was claimed by Brumby as treasurer of the board, but in reality it was understood and agreed between him and the board that he was to be paid such salary to act as superintendent of the electric-light and water plant; that the act of 1909 (Acts 1909, p. 1099), authorizing the board to elect one of its members as treasurer and to fix his compensation, was unconstitutional for the reason that it varied from a general law as contained in § 709 of the Code of 1895; that so much of the act of 1906 (Ga. L. 1906, p. 846), creating the Board of Lights and Waterworks, as made the chairman of the committee of water and lights from the city council a member of the Board of Lights and Waterworks was unconstitutional, for the reason that it undertook to make a member of the council the holder of two offices, in violation of § 886 of the Civil Code, and of the constitutional provision as contained in § 5732 of the Code of 1895; and that the salary paid to Brumby was excessive. By amendment J. P. Ellison, a citizen and taxpayer of Marietta, was made a party plaintiff. The petition as amended was demurred to. The defendants filed an answer in which it was admitted, among other things, that Brumby as mayor was ex officio a member of the board, and that the charter of the city fixed the compensation of the mayor. It was averred that the act of 1906 (Acts 1906, p. 846) creating the board, was amended by the act of 1909 (Acts 1909, p. 1099), and that the amending act authorized and directed the board to elect one of its members treasurer, and to fix the compensation of such treasurer; that by virtue of the authority contained in the act the board, on August 28, 1917, elected Brumby as its treasurer at a salary of $2000 per year; and that the sum of $200 per month paid to Brumby by the board was for services performed by him in the discharge of his duties as such treasurer. It was denied that the resolution which authorized the election of Brumby for the first term held by him as treasurer was for the purpose of paying him for duties as superintendent or manager of the electric-light and water plant of the city. It was averred, that the purpose of vesting him with the authority to act as superintendent was that he continue his services free in the operation of the plant, as he had been doing before; that no salary was paid, or intended to be paid, to him for any services rendered other than in the performance by him of duties pertaining to the office of treasurer; that on

January 22, 1920, the board re-elected Brumby as its treasurer at the sum of $200 per month, as his compensation for the duties to be performed as such treasurer; and that the salary was a reasonable one for the duties to be performed by Brumby as treasurer. The court granted the injunction prayed for; and the defendants excepted.

J. Z. Foster, for plaintiffs in error. George F. Gober, contra.

HILL, J. (After stating the foregoing facts.)

1. The controlling question in the case is whether one person can act in the double capacity of mayor of Marietta and of treasurer of the Board of Lights and Waterworks of that city, and receive compensation, or salaries, for the discharge of the duties of both positions. It is insisted that Brumby as mayor cannot hold that office and receive a salary for the discharge of his duties as mayor, and also hold the office of treasurer of the board and receive another salary therefor; in other words, that he cannot at the same time hold two city offices and draw two salaries. The act of 1909 (Acts 1909, p. 1100), amending the act of 1906 (Acts 1906, pp. 846-848), authorizing the mayor and council of the City of Marietta to hold an election to determine whether or not bonds should be issued by the City of Marietta for the purpose of purchasing, establishing, maintaining, building, and acquiring a system of waterworks in the City of Marietta, etc., provided "that it shall be the duty of said board of water and lights to elect a treasurer, said treasurer being member of board, whose duty it shall be to receive and disburse all the funds arising from the sale of bonds of the City of Marietta for sewerage, waterworks, and light purposes, and to receive and disburse all subsequent appropriations and revenues acquired or derived in the operation and maintenance of said system of lights, waterworks, and sewerage, and said board shall have the power and authority to fix the compensation and to set bond for treasurer, the amount of which shall not be less than the whole amount of money that may come into his hands," etc. It will be seen, therefore, that the legislature has conferred upon the board authority to elect a treasurer and to fix his compensation. The salary payment which it is sought to enjoin was fixed by the board on January 22, 1920, for treasurer alone; and whatever salary may have been fixed previously for any other services rendered by Brumby as manager or otherwise, the present salary was fixed for the express purpose of compen-

sating him for his services rendered as treasurer of the board, to which position he had been elected by the board as authorized by the act of 1909 (supra); and therein lies the distinction between the present case and the case of *Twiggs* v. *Wingfield,* 147 *Ga.* 790 (95 S. E. 711, L. R. A. 1918E, 757), relied upon by the defendants in error in this case. In that case it was held that a member of the flood commission of the City of Augusta could not legally contract with that commission for the performance of duties which, as a member of such commission and as commissioner of public works for the City of Augusta and ex-officio city engineer, it was made his official duty to superintend and supervise on behalf of the city; and that such contract was contrary to public policy and illegal. But it will be noted that in that case there was no express authority conferred on the commission and the official to contract; here there is express authority conferred on the board to elect a treasurer from among its members and to fix his compensation. In other words, the legislature has declared in this case what it had not done in the *Twiggs* case, viz., what the public policy was with reference to the board contracting with the treasurer. In the absence of express legislative authority it might well be said, as it was in the *Twiggs* case, that such contracts were against public policy. But it has nowhere been held, so far as we are aware, that where the legislature has expressly provided for such contracts, such legislative authority is illegal and contrary to public policy. The expression of the legislature is conclusive on the question of public policy.

It is insisted, even if the salary fixed by the board for the treasurer is legal, that Brumby can not hold two offices at the same time and receive two salaries from the same municipality. We know of no inhibition against his doing so where there is express legislative authority. It is true that no person can hold in any manner whatever, or be commissioned to hold, more than one *county* office, except by special enactment of the legislature heretofore or hereafter made. Civil Code (1910), § 259. It will be observed that that section applies to one who attempts to hold two county offices without express legislative authority. But in the instant case express legislative authority is conferred on the mayor of Marietta, when duly elected, to hold the office and to receive the salary therefor; and also on the treasurer of the board to hold that position and to receive the salary fixed by the board.

The mayor of Marietta is not a councilman or alderman, so as to bring him within the provisions of section 886 of Civil Code of 1910. *Akerman* v. *Ford,* 116 *Ga.* 473 (42 S. E. 777).

2. It is insisted that even if the treasurer was elected according to law, yet the salary named by the board is excessive, and therefore is illegal. It is true that the petition alleges that it is excessive and illegal, and the petition was sworn to; but this allegation is a mere conclusion of the pleader and is not such evidence as would authorize the court to hold that the amount named was excessive. The burden was upon the plaintiffs to prove the material allegations of the petition. They have failed to carry this burden in this particular, and therefore the trial court erred in granting the injunction.

3. Headnote 3 needs no elaboration.

*Judgment reversed. All the Justices concur.*

ATKINSON, J., concurs in the judgment, but not in all that is said in the second division of the opinion.