## McFARLIN et al. v. BOARD OF DRAINAGE COMMIS-SIONERS OF MIDDLE RIVER DISTRICT et al.

1. The portions of the act of 1911 (Acts 1911, pp. 108, 132; Park's Code §§ 439(a)–439(oo), known as the drainage act), that provide, "The treasurer of the county in which the proceeding was instituted shall be ex-officio. treasurer of such drainage commissioners," and "The official bonds of the tax-collector and county treasurer shall be liable for the faithful performance of the duties herein assigned them," are not repugnant to art. 3, sec. 7, par. 8, of the constitution of Georgia of 1877 (Civil Code of 1910, § 6437), which provides that "No law or ordinance shall be passed which refers to more than one subject-matter or contains matter different from what is expressed in the title thereof."

2. So much of section 19 of the act of 1911, supra, as provides that the treasurer of the county in which the proceeding was instituted shall be ex-officio treasurer of the drainage commission, and so much of section 34 of the act as provides that "The official bonds of the tax-collector and county treasurer shall be liable" for the duties therein assigned them, are not void as being repugnant to art. 11, sec. 3, par. 1, of the constitution of 1877 (Civil Code of 1910, § 6600), which provides that "Whatever tribunal, or officers, may hereafter be created by the General Assembly, for the transaction of county matters, shall be uniform throughout the State and of the same name, jurisdiction, and remedies, except that the General Assembly may provide for the appointment of commissioners of roads and revenues in any county."

3. The act of 1911 is not void on the ground that it attempts to impose upon the county treasurer duties which extend beyond the territorial limits in which he was elected to serve as such treasurer.

4. Section 41 of the act of 1917 (Acts 1917, p. 100), amendatory of the act of 1911, supra, is not void on the ground that. it withdrew and abolished all of the emolument of the county treasurer as ex-officio treasurer of the drainage commission, and that this amounted to an abolition of the office of ex-officio treasurer of the drainage commission, etc.

5. The rate of interest chargeable against a defaulting county treasurer is twenty per cent. per annum after default. The court below erred in sustaining the special demurrer to paragraph 8 of plaintiff's petition, which in effect holds contrary to this ruling.

Nos. 2884, 2903. JULY 12, 1922.

Action upon bond. Before Judge Hodges. Franklin superior court. October 7, 1921.

The Board of Drainage Commissioners of Middle River District brought suit against G. A. McFarlin as principal, and A. F. McFarlin and others as securities on his bond as treasurer of Franklin County, to recover the sum of $40,000, with interest thereon from September 13, 1920, at the rate of 20 per cent. per annum. The petition alleged that G. A. McFarlin had been elected

county treasurer of Franklin County, and that he as principal and the other defendants, on December 27, 1916, executed a bond payable to the ordinary of Franklin County and his successors in office, in the sum of $40,000, conditioned that G. A. McFarlin should faithfully discharge all the duties of such office of county treasurer during the time he continued therein or discharged any of the duties thereof. The bond was duly attested and approved by the then ordinary of Franklin County. The principal, having qualified under the bond as county treasurer beginning January 1, 1917, undertook to discharge the duties of the office, and continued to discharge the duties of the office until December 1, 1920. Subsequently to the time of the execution and filing of the bond, and under the provisions of the act of the General Assembly of Georgia approved August 19, 1911 (Acts 1911, pp. 108-132, codified in Park's Annotated Code of Georgia, §§ 439 a-oo), and during the year 1919, and a term of office of G. A. McFarlin as treasurer, a drainage district was organized out of the territory comprising a part of Franklin County and a part of Stephens County, and upon a petition which was instituted in Franklin County; and under such proceedings three drainage commissioners were appointed and created a body corporate under the name and style of "Board of Drainage Commissioners of Middle River District," and G. A. McFarlin, being the treasurer of Franklin County, in which the proceedings were instituted, became, under the terms of the above act, ex-officio treasurer of such drainage district. During his term of office for which the bond was given, to wit, between January 1, 1917, and December 1, 1920, there came into the hands of G. A. McFarlin, in his capacity as treasurer of Franklin County and ex-officio treasurer of such drainage commissioners, the proceeds of bonds issued by the Board of Drainage Commissioners of Middle River District, said proceeds amounting to the sum of $174,730; and he also received from the assessments laid upon the taxpayers and property owners of the drainage district the sum of $10,600, making a total lawfully received by him between the periods named in his capacity as treasurer and ex-officio treasurer as aforesaid, in the amount of $185,350. Notwithstanding it was the duty of said G. A. McFarlin, as one of the duties of his office as county treasurer of Franklin County, to faithfully account for the sum of money and every part thereof and to pay out same only as re-

quired by law, said G. A. McFarlin did appropriate to his own use, and did otherwise unlawfully dispose of, and did fail to account for and to pay over to said drainage district or his successors in office, on the demand of the Board of Drainage Commissioners of Middle River District, the sum of $42,466.40. The Board of Drainage Commissioners lawfully demanded said amount of G. A. McFarlin, treasurer, on September 19, 1920; and he then and there refused, and continuously since that time has refused and failed, to pay over the same, or to account for the same. As a result thereof " said bond has been broken, and said G. A. McFarlin, treasurer as. aforesaid, and his sureties on said bond have become indebted to the plaintiff " in the above-stated sum. The damages resulting to the plaintiff by reason of the acts aforesaid exceed the amount of the principal sum stated in the bond in which the obligees thereunder became bound. The prayer was, that the plaintiff recover of G. A. McFarlin as principal, and the other named defendants as sureties on his bond, the sum of $40,000, with interest thereon " at the rate prescribed by law in such cases made and provided, from and after the 13th day of September, 1920." The defendants filed a demurrer to the petition, attacking the act of 1911 as being unconstitutional upon various grounds, which are stated in the opinion. The court overruled the general demurrer as to each and all of the grounds set forth therein. The court also sustained the special demurrer set forth in paragraph 14 of defendants' original demurrer, relating to paragraph 8 of plaintiff's petition. To the overruling of the general demurrer the defendants excepted; and to the sustaining of the special demurrer the plaintiff excepted and filed a cross-bill of exceptions.

*W. A. Charters, W. W. Stark, Goode, Owen & Andrews,* and *Dorough & Adams,* for plaintiffs in error.

*W. S. McDaniel, J. H. & Emmett Skelton, W. R. Little, R. T. Camp, J. W. Landrum, Anderson, Rountree & Crenshaw,* and *Little, Powell, Smith & Goldstein,* contra.

HILL, J. (After stating the foregoing facts.)

1. The act of 1911 — Acts 1911, pp. 108, 132; Park's Code §§ 439(a)-439(oo), known as the drainage act, has been under review by this court twice. *Almand* v. *Pate,* 143 *Ga.* 711 (85 S. E. 909); *Almand* v. *Board of Drainage Commrs.,* 147 *Ga.* 532 (2) (94 S.

E. 1028). In the first case the act was held to be constitutional as against the attacks then made upon it. The demurrer in the present case raises other questions as to the constitutionality of the act. The demurrers and amended demurrers in the present case raise questions as to the constitutionality of the act of 1911, supra, upon several grounds. First, the act is attacked as being contrary to and obnoxious to art. 3, sec. 7, par. 8, of the constitution of Georgia of 1877 (Civil Code of 1910, § 6437), which provides that " No law or ordinance shall be passed which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." The caption of the act of 1911, supra, is as follows: " An act to promote the public health, convenience, and welfare by leveeing, ditching, and draining the wet, swamp, and overflowed lands of the State, and providing for the establishment of levee or drainage districts for the purpose of enlarging or changing any natural watercourses, and for digging ditches or canals for securing better drainage or providing better outlets for drainage, for building levees or embankments and installing tide-gates or pumping plants for the reclamation of overflowed lands, and prescribing a method for so doing, and providing for the assessment and collection of the cost and expense of the same, and issuing and selling bonds therefor, and for the care and maintenance of such improvements, when constructed; and for other purposes." It is insisted that in so far as the act of 1911 provides that " The treasurer of the county in which the proceeding was instituted shall be ex-officio treasurer of such drainage commissioners," and in so far as the same provides that " The official bonds of the tax-collector and county treasurer shall be liable for the faithful performance of the duties herein assigned them," it is void and unconstitutional for the reason that it is obnoxious to the above-quoted provision of the constitution. It is argued that nowhere in the title of the act above quoted is it expressed that the duties of the county treasurers of the State shall be enlarged or added to, nor that the additional office of treasurer of such drainage commissioners shall be devolved upon the county treasurer, and that it is nowhere expressed in the title of the act of the General Assembly that the official bonds of the county treasurer shall be liable for the faithful performance of the duties assigned them by the act. It is further insisted that the duties of

the county treasurer were, at the time of the passage of the act, fully set forth and declared in the Civil Code of 1910, § 574 et seq., and that the duties of the county treasurer are a distinct and separate subject-matter; and therefore that the act of 1911, supra, refers to more than one subject, in that it refers to the establishment of a drainage district; and also refers to the duties of county treasurer, which is a separate and distinct subject-matter from the establishment of a drainage district. We have set forth at some length the contentions of the plaintiff in error in his attack upon the constitutionality of the act of 1911, in order that the issue raised by the petition and demurrer should be squarely met.

As early as the case of *Mayor &c. of Savannah* v. *State,* 4 *Ga.* 26, 38, Judge Lumpkin, delivering the opinion of the court, stated the history and the reason for this constitutional provision, in the following language: " As to the objection that the act of 1841 is violative of the 17th section, 1st article of the constitution of Georgia, because its title is at variance with the body of the act, I would observe that the traditionary history of this clause is, that it was inserted in the constitution of 1798 at the instance of General James Jackson, and that its necessity was suggested by the Yazoo Act. That memorable measure of the 17th of January, 1795, as is well known, was smuggled through the legislature, under the caption of an act ' for the payment of the late State troops,' and a declaration, in its title, of the right of the State to the unappropriated territory thereof, ' for the protection and support of its frontier settlements.' The true interpretation of this clause has become too well settled by the usage and practice of every department of the State government to be now disturbed. It is, that so much only of a statute is void as contains matter different from what is expressed in the title. Such has been the uniform construction put upon this provision, by the State courts separately, and of the judges in convention." But is the matter in the body of the act of 1911, which it is contended is at variance with the title of the act, such as to render it obnoxious to the inhibition of the constitution said to be offended? In *Martin* v. *Broach,* 6 *Ga.* 21 (50 Am. D. 306), this court, in construing this same provision, decided: " 1. The 17th section of the 1st art. of the State constitution, inhibiting the passage of any law, by the legislature, containing any matter different from what is expressed in the

title, does not require that the title should set forth a synopsis of the entire act. 2. Where the title specifies some of the objects for which the statute was passed, and contains this general clause — ' and for other purposes therein contained,' portions of the act not specially indicated in the title are, nevertheless, good, under this general clause." The title of the act of 1911 contains this general clause. Furthermore, we are of the opinion that the matter indicated in the body of the act as not being included in the title of the act, is germane to the general purpose of the act and does not subject that portion of the act to the criticism urged against it. After stating in the first portion of the caption of the act some of its purposes, the caption also suggests a provision " for the assessment and collection of the cost and expense of the same, and using .and selling bonds therefor," etc. We are of the opinion that the provision in the body of the act to require the county treasurer to become ex-officio treasurer of the drainage commissioners, and that the official bonds of the tax-collector and county treasurer shall be liable for the faithful performance of. the duties assigned them, is germane to the main purpose of the act. It would certainly be remarkable and unusual for the act to provide for the collection of the expense of ditching and draining, etc., and yet not provide some official whose duty it should be to take charge of and preserve the money deposited with him for safekeeping, and for paying it out according to law. See *Mayor &c. of Americus* v. *Perry,* 114 *Ga.* 871 (40 S. E. 1004, 57 L. R. A. 230) ; *City of Cartersville* v. *McGinnis,* 142 *Ga.* 71 (2) (82 S. E. 487, Ann. Cas. 1915D, 1067) ; *Davidson* v. *Kirkwood,* 152 *Ga.* 357 (110 S. E. 154) ; *Crowell* v. *Akin,* 152 *Ga.* 126 (108 S. E. 781).

2. So much of section 19 of the act of 1911, supra, as provides that the treasurer of the county in which the proceeding was instituted shall be ex-officio treasurer of the drainage commission, and so much of section 34 of the act as provides that " the official bonds of the tax-collector and county treasurer shall be liable " for the duties therein assigned them, is attacked as being void and unconstitutional, on the ground that the same is contrary to, and obnoxious to, art. 11, sec. 3, par. 1, of the constitution of Georgia of 1877 (Civil Code of 1910, § 6600), which provides that " Whatever tribunal, or officers, may hereafter be created by the General Assembly for the transaction of county matters, shall be

uniform throughout the State and of the same name, jurisdiction and remedies, except that the General Assembly may provide for the appointment of commissioners of roads and revenues in any county," on the ground that the existing provisions of the law at the time of the passage of the act of 1911 prescribed and defined the duties of the county treasurers of the State, and the act of 1911 purported to add to the official duties pertaining to the office of county treasurer; and furthermore, the act of 1911 purported to add to the official duties pertaining to the office of county treasurer in only those counties where proceedings are instituted to establish drainage districts, so that the duties of the office of treasurer in such counties embraced duties which were not incumbent upon county treasurers in counties where no such proceedings are instituted; and also prescribed the kind, character, and obligation of the bonds of county treasurers and the liability of sureties thereon, while the act of 1911 purported to add to the official duties pertaining to the office of county treasurer, and to add to and increase the obligations of the official bonds of county treasurers and the sureties thereon. These assignments of error are without merit. The Civil Code (1910), § 291, provides that " Every official bond executed under this Code is obligatory on the principal and sureties thereon — 1. For any breach of the condition during the time the officer continues in office or discharges any of the duties thereof. . . 3. For the faithful discharge of any duties which may be required of such officer by any law passed subsequently to the execution of such bond, although no such condition is expressed therein." In *Stale* v. *Henderson,* 120 *Ga.* 780 (5) (48 S. E. 334), it was held: " Where the act imposing additional duties on the ordinary declares that for non-performance of these duties the ordinary shall be liable upon his official bond, his sureties are likewise made liable, as there could be no official bond without sureties." We may add that from the record it appears that the drainage act of 1911 imposing additional duties upon the treasurer of Franklin County was in existence when the bond was given and signed by the treasurer and by his sureties.

3. The act of 1911 is also attacked as being void on the ground that it attempts to impose upon the county treasurer duties which extend beyond the territorial limits of the county in which he was elected to serve as such treasurer. It is insisted that the Middle

River Drainage District was organized out of the territory comprising a part of Franklin County and part of Stephens County in this State; and that it is incompetent for the duties of the county treasurer of Franklin County to be so enlarged in their scope as to extend into territory beyond the confines of Franklin County, by legislative enactment. This contention is without merit. We are of the opinion that the drainage act of 1911 makes no attempt to create a territory lying in more than one county and to require the treasurer of the county in which the legal situs of the drainage district is located to exercise his duties as treasurer in a district lying outside of his county; in other words, to exercise any extra-territorial duties. He is required, under the act, to receive and pay out money in the county of which he is treasurer. He receives money from the tax-collector of his own county; he pays it out on vouchers issued by a board of his own county. See Acts 1911, p. 131. However, county officers are often required to perform official duties beyond the limits of their own county. Sheriffs may make arrests in criminal cases and may execute attachments beyond the limits of their counties in certain instances. Penal Code (1910), § 919; Civil Code, § 5075. The law provides that ordinaries may preside in counties other than their own, in cases of disqualification of ordinaries in other counties. We are of the opinion that there is nothing in the constitution or laws which would prevent the legislature from imposing extra-territorial duties on county officers. But in the instant case we do not think that the legislature has imposed such duties on the county treasurers of this State.

4.  The act of August 21, 1917 (Acts 1917, p. 100), amended the act of 1911 by adding the following section: " 41. That the tax-collector nor the county treasurer, or the equivalent officer, shall receive no commission for handling the drainage fund, nor for performing any duty imposed upon him in said drainage act approved August 19, 1911." It is insisted that the section of the act of 1917 quoted above withdrew and abolished all of the emolument of the county treasurer as ex-officio treasurer of the drainage commission, and that this amounted to an abolition of the office of ex-officio treasurer of the drainage commission; and that, such office having been thus abolished before the establishment of the Middle River Drainage District, G. A. McFarlin never

in fact became ex-officio treasurer of the drainage commission, and his official bond as county treasurer of Franklin County was never bound for any money paid him or collected by him as such ex-officio treasurer of the drainage commission; and that if any money or funds were paid over to him, the same was voluntarily paid without warrant of law, and the defendants as sureties on his official bond as county treasurer of Franklin County never became liable therefor and are not now liable therefor. We can not agree to the above contention. Whenever a public officer accepts such office and enters upon the discharge of his duties as such, he takes it with all the burdens that are placed or may be placed upon such office according to law; and if he retains the office and undertakes to perform the duties thereof for a fixed compensation, he does so with the possibility that such duties may be increased or diminished. *Twiggs* v. *Wingfield,* 147 *Ga.* 790 (95 S. E. 711, L. R. A. 1918E, 757). Whatever the rule may be with reference to withdrawing all, or substantially all, of the emoluments of an office, as being practically an abolition of the office itself, we are of the opinion that such rule has no application to a case like the present, where there is nothing to indicate that all of the emoluments of the office of county treasurer have been withdrawn from that official, but only a portion; and independently of the compensation which he may have received as ex-officio treasurer of the drainage district, he is still entitled to his compensation for acting as treasurer of the County of Franklin as such. And it will be observed that the act of 1917 does not take away from the county treasurer any compensation which he had been entitled to therefor. Neither did the drainage act of 1911 provide any compensation for the county treasurer. The act of 1917 therefore merely expressed what was already the law on that subject. The law providing compensation for county treasurers is found in the Civil Code (1910), § 588, and by reference to that it will be observed that the county treasurer receives compensation only for paying out "county funds" and for certain other services. There is nothing in the act of 1911, or that of 1917, which indicates a purpose on the part of the legislature to abolish the office of county treasurer or to relieve the incumbent from the duty of handling the drainage funds.

5. Exception is taken, in the cross-bill, to the sustaining of the

special demurrer as set forth in paragraph 14 of the defendants' original demurrer relating to paragraph 8 of plaintiff's petition, the effect of which is to hold that the county treasurer was not liable for interest at the rate of 20 per cent. The Civil Code (1910), § 585, provides: " When the county treasurer at any time fails to pay any order which is entitled to payment, or other legal demand upon him, or to pay any balance that may be in his hands to his successor, or to the person entitled to receive it, the ordinary may issue execution against him and his sureties for the amount due, as against a defaulting tax-collector." § 1187 provides: " If any collector shall fail to settle his accounts with the comptroller-general in terms of the law, he shall issue execution against him and his sureties for the principal amount, with interest at the rate of 20 per cent. per annum on said amount: Provided, that if upon a final settlement it should appear that said collector was entitled to credits at the time he is required by law to settle, the Comptroller-General may allow the same, and charge such interest only on the amount for which the collector is in default, together with all the costs and attorney's fees incurred by reason of the issuance of said execution." In *Lamb* v. *Dart*, 108 Ga. 602 (34 S. E. 160), the 5th headnote is as follows: " The rate of interest chargeable against a defaulting county treasurer is 20 per cent. per annum after default, and the fi. fa. properly provided for the recovery of this interest." The case of *Renfroe* v. *Colquitt*, 74 *Ga.* 618, is distinguishable in its facts from the present case.

*Judgment affirmed on the main bill of exceptions; and reversed on the cross-bill. All the Justices concur.*