21964.   LIBERTY MUTUAL INSURANCE COMPANY v. MEAD CORPORATION.

ARGUED APRIL 8, 1963—DECIDED MAY 9, 1963—REHEARING DENIED MAY 29, 1963.

*Bryan, Carter, Ansley & Smith,* for plaintiff in error.

*Nall, Miller, Cadenhead & Dennis, A. Paul Cadenhead, Thomas A. Rice,* contra.

*H. H. Perry, Jr., Ed Barham,* for party at interest not party to record.

GRICE, Justice. For determination is whether an insurer was required to defend remaining actions against the insured after it had, with the consent and contribution of the insured, exhausted the policy limit of liability by settling two of the suits arising from the same accident.

This issue arose in a petition filed in the Civil Court of Fulton County by the insured, Mead Corporation, against its insurer, Liberty Mutual Insurance Company. In it Mead sought to recover from Liberty attorney's fees and expenses which Mead incurred after Liberty refused to participate further in the defense of claims against Mead. Mead alleged that it was insured by Liberty for a maximum of $100,000 for any one accident resulting from the operation of its vehicles; that one of such vehicles was involved in a collision resulting in fatal injuries to four persons; that subsequently, various claims were made and suits filed by persons claiming causes of action as a result of such deaths; that pursuant to the right given it in the insurance policy, Liberty compromised and settled certain of the claims, paying its $100,000 of liability insurance coverage and Mead contributing $60,000; and that following such settlement Liberty withdrew from further handling of additional claims and cases and returned them to Mead for further handling. A copy of the policy was attached to the petition.

To this suit Liberty, the insurer, interposed general demurrers. These asserted that the petition showed that it had paid the full $100,000 coverage in compromise and settlement of claims arising from the accident, that the items sued for were incurred after payment of the limit of coverage, and therefore, there was no insurance afforded by the policy for those items. The trial court sustained such general demurrers and dismissed the petition.

This issue was next considered by the Court of Appeals. Reversing the trial court, it ruled that under this standard form liability insurance policy the insurer's covenant to defend was

separate and distinct from its covenant for payment of liability, and that its covenant to defend did not cease because it paid the limit of coverage on other claims against the insured arising from the same accident. Accordingly, it held that the refusal of the insurer to defend the remaining claims was a breach of its contract with the insured, rendering it liable for necessary items incurred in the defense of such claims. In that holding it rejected the contention that this result would constitute unauthorized practice of law by a corporation.

We granted the insurer's application for certiorari to review the judgment of the Court of Appeals.

At the outset we recognize that the insurer's undertaking with respect to defense of the insured must be determined by the particular contract of insurance between the parties. We examine the policy to determine whether it imposes a continuing duty to defend under the facts here.

In doing so we strive to ascertain what the parties intended, since this is the cardinal rule of construction. *Code* § 20-702. This requires adherence to another rule, that the insurance contract be construed "according to the entirety of its terms and conditions as set forth in the policy . . ." *Code Ann.* § 56-2419. Furthermore, "If the construction is doubtful, that which goes most strongly against the party executing the instrument, or undertaking the obligation, is generally to be preferred." *Code* § 20-704 (5).

The issue for determination involves construction of the words "With respect to such insurance as is afforded by this policy the company shall: (a) defend any suit against the insured . . ."

Does "such insurance as is afforded by this policy" refer *only* to the several *types* of liability coverage afforded by the policy, i.e., bodily injury liability and the other coverages? The insured's contention is that it refers only to type and that it imposes the duty to defend the remaining suits here, regardless of the limit of $100,000 as to liability for the coverages.

Or does "such insurance as is afforded by this policy" refer to the types of coverages *and* the *amount* of those coverages? The insurer's position is that the language refers to both, and thus limits the duty to defend to $100,000 of such coverage, and because of payment of that amount by the insured, under the cir-

cumstances here, no duty exists to defend the remaining suits.

We believe the answer to this inquiry is found in the policy itself and we point to its significant provisions.

The policy begins with the statement that the insurer agreed with the insured, *"subject to the limits of liability,* exclusions, conditions and other terms of this policy:."* (Emphasis ours.)

Immediately following, under the title of "Insuring agreements" the insurer promised to pay for various coverages identified as A through G, which included bodily injury liability.

Next, under the heading of "Defense, settlement and supplementary payments" is the provision which created the issue here: "With respect to such insurance as is afforded by this policy, the company shall: (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent . . ."

Then, it provided for payment of certain bonds and expenses, and recited that these and the costs of defending were payable in addition to the applicable limit of liability of the policy.

The policy's conditions recite that coverages A through G, which include bodily injury liability, are restricted to the limit of liability which the petition states is $100,000 for any one accident. In addition, the policy contains numerous definitions, exclusions and conditions.

The foregoing summary, extending to the four corners of this document, shows, we think, the significance of the $100,000 limit of liability.

As we construe them, the crucial words "such insurance as is afforded by this policy" refer not merely to the *types* of coverages enumerated A through G. That, as we view the policy, is too narrow a description of "such insurance as is afforded by this policy." Insurance is composed not only of *type* of coverage, but also *amount* of coverage. To be insured only as to type of coverage is no protection at all. Another dimension is involved, the *amount* of that coverage.

We therefore hold that under this policy the duty to defend is limited by the amount of liability coverage afforded by the policy.

We now ascertain whether the insurer here has performed its duty in this respect.

The facts as to this are recited in the insured's petition as follows: "Pursuant to the rights granted the defendant insurer in said insurance policy, said insurer, with the consent of the [insured] compromised and settled the claims for the death of said two persons for a total of $160,000. Sixty thousand dollars of said settlement figure was contributed by the [insured] and $100,000 was contributed by the defendant insurer. It was agreed between the parties that the actions of each as alleged in this paragraph did not waive the rights of the parties under the remaining provisions of said insurance policy."

These allegations show that the insurer fulfilled its obligation under the policy. With the insured's consent and contribution, the insurer paid the full policy limit of liability in compromise and settlement of two of the claims and suits against its insured, thus defending with reference to "such insurance" as was afforded by the policy. Under our construction of the insurance contract nothing further was required.

Therefore, allegations of events which took place thereafter, namely, the insurer's withdrawal and refusal to defend the remaining claims and suits and the insured's incurrence of attorney's fees and expenses in defending them, constitute no basis for recovery of damages from the insurer. There is no allegation that the insured suffered any prejudice of its rights by the insurer's withdrawal; the only damage of which it complains is monetary.

The result reached here accords with that of the only other jurisdiction which has considered the insurer's duty to defend under facts comparable to those in the instant case.

The Supreme Court of New Hampshire, in Lumbermen's Mutual Cas. Co. v. McCarthy, 90 N.H. 320 (8 A2d 750), decided in 1939, held that where the insurer had satisfied a judgment against the insured to the extent of the policy limit it was not required to defend a remaining suit. There, the insurer had agreed to defend "any suit, coming within the terms of this policy, seeking damages on account of [coverages of the policy] . . ." P. 320. The court, after construing all parts of the policy together, noted that "the *primary obligation* imposed upon the insurer was to *pay*

the insured's legal liability for damages on account of the contingencies specified, and that the other provisions were *dependent* thereon and designed to implement that primary obligation." P. 323. (Emphasis ours.) It construed the policy to obligate "the insurer to pay the liability of the insured up to the policy limits, and in addition thereto to pay those items of expense which it has definitely assumed. Until these duties of payment are fully performed, it also has the duty either to settle or to conduct the defense of actions against the insured. But, upon performance of its duties of payment its duty to defend ceases to exist . . ." P. 323. In so holding the court was careful to distinguish this situation from one where an insurer, (1) elects to pay the policy limit and from the beginning casts upon the insured the whole burden of defense, or (2) elects to defend rather than to settle and then abandons the defense of the claim in mid-course to the prejudice of the insured. One of the five justices dissented.

Later, in 1960, the McCarthy decision was followed in Travelers Indem. Co. v. New England Box Co., 102 N.H. 380 (157 A2d 765), when the same question was presented with reference to the 1955 standard automobile liability policy, the one involved in the case at bar. Construing language identical with that now before us, the court stated, "By its policy the [insurer] agrees to defend any suit to recover damages because of injury to or destruction of property, even if groundless, but expressly stipulates that this right and duty is 'with respect to such insurance as is afforded by this policy,' which is the language of the Standard Automobile Liability Policy as revised in 1955." P. 386.

For a construction that the duty to defend is an obligation independent of that to pay, chief reliance is placed upon a New York case from the trial level, American Employers Ins. Co. v. Goble Aircraft Specialties, Inc., 205 Misc. 1066 (131 NYS2d 393), decided after the McCarthy case but before the Travelers case. But neither the Goble case nor any relied upon for that construction involves the factual situation in the case at bar which we deem controlling, to wit, the insurer, with the insured's consent and contribution, paying its full limit of liability coverage in extinguishment of the insured's liability to that amount.

From our construction of the language of this policy, we hold that no duty to defend any remaining claims and suits existed here, and that the Court of Appeals erred in reversing the trial court's dismissal of the petition upon demurrer.

This view makes it unnecessary to pass upon whether a construction requiring a further duty to defend after exhaustion of the liability limit would sanction the policy as an agreement on the part of a corporation to practice law in defense of cases in which the corporation had no pecuniary or financial interest, and thus contrary to the statutes of our State.

*Judgment reversed. All the Justices concur, except Candler, J., who dissents.*