### 31551. GREENWOOD CEMETERY, INC. v. TRAVELERS INDEMNITY COMPANY.

Per curiam.

This is a policy case, insurance and public, here on certiorari. *Travelers Indemnity Co. v. Greenwood Cemetery,* 139 Ga. App. 222 (228 SE2d 139) (1976).

In 1937, Greenwood sold a cemetery lot to C. G. Bozeman by deed permitting erection of a marker not to exceed 2' x 1' x 1'. A provision in the sales contract giving the cemetery the right to include reasonable regulations was not incorporated in the deed.

In July 1969 Travelers issued a comprehensive general liability policy to Greenwood. Its standard coverage clause[1] was amended as follows: "With respect to any professional malpractice, error or mistake in the practice of the named insured's operations as a cemetery the policy is amended to read as follows: The coverages are replaced by the following:

"Coverage A—To pay on behalf of the insured all

---

[1] The standard coverage clause read as follows: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of Coverage A, bodily injury or Coverage B, property damage, to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent. . ."

sums which the insured shall become legally obligated to pay as damages. (1) For bodily injury, sickness, disease or death including mental anguish. (2) For injury to or destruction of property of others which is not in the care, custody or control of the insured. Because of any professional malpractice, error or mistake in the embalming handling, disposition, burial disinterment or removal of any deceased human body or any conduct or any memorial service by the insured, even though no deceased human body actually be present, or because of any injury to destruction or interference with the right of burial of a deceased human body.

"Coverage B—To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of urns, caskets, linings or fittings, casket cases, crypts, mausoleums of other facilities for the care of burial of a deceased human body, belonging to burying or caring for a deceased human body." (Sic.)

Mr. Bozeman died. A dispute arose as to the size of the marker which could be placed upon his grave. His widow and son had a marker conforming to the deed erected. The marker was larger than that allowed by the cemetery's regulations and Greenwood removed it. Suit was filed by the Bozemans against the cemetery praying for $3,000 damages for mental anguish and damage to their peace, feelings and happiness, as well as $25,000 punitive damages.

Travelers undertook defense of the suit but notified the cemetery that its policy did not cover punitive damages. The jury returned a verdict in favor of the Bozemans for $1,500 damages to their peace and happiness and $10,000 punitive damages. After notice to the cemetery and payment of the $1,500, Travelers withdrew from participation in the litigation.

The cemetery negotiated with the Bozemans so as to reduce the punitive damage award to $5,000, paid it, and filed this suit against Travelers in July 1974.

Travelers moved for summary judgment on May 16, 1975,[2] and the cemetery moved for summary judgment in

[2] This court decided *Westview Cemetery v. Blanchard,*

August 1975. The trial court granted the cemetery's motion and denied Travelers'. The Court of Appeals reversed.

In *Westview Cemetery v. Blanchard,* 234 Ga. 540 (216 SE2d 776) (1975), this court held that where the only injury is to peace, feelings and happiness of the plaintiff, an additional award of punitive damages is an unauthorized double recovery.

The Court of Appeals correctly found that our decision in *Westview Cemetery,* supra, rendered the punitive damage portion of the Bozeman judgment an illegal double recovery. The Court of Appeals went further however and held that even if there was insurance coverage, an illegal judgment against an insured cannot be enforced against an insurer. In this that court erred.

Clearly, even though illegal, the punitive damage portion of the Bozeman judgment could be enforced by the Bozemans against Greenwood Cemetery—because it was there. A judgment against an insured is the responsibility of the insurer, even though the judgment be for or include illegal damages, when that judgment is covered by insurance.

The first question in this case thus is the question of coverage. The insurer argues convincingly that because the Bozemans were not seeking damages to the grave marker, coverage B of the endorsement cannot be used to cover the punitive damage award. We agree.

The insured argues that due to the insurer's use of periods where one would expect some other form of punctuation, the insurer agreed under coverage A "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages." We cannot accept this as having been the intent of the parties (*Liberty Mut. Ins. Co. v. Mead Corp.,* 219 Ga. 6, 8 (131 SE2d 534) (1963)), because such an interpretation would render the remainder of the endorsement, including coverage B (as well as other policies of insurance), surplusage.

However, we find coverage of these punitive damages in the following language of the endorsement: "Coverage A—To pay on behalf of the insured all sums

234 Ga. 540 (216 SE2d 776), on May 20, 1975.

which the insured shall become legally obligated to pay as damages (1) *for* . . . mental anguish . . . because of any professional malpractice, error or mistake in . . . any conduct . . . by the insured. . ." (Emphasis supplied.) The word "for" has numerous meanings. The insurer would read the word "for" as meaning "equivalent to" (and therefore not greater than) or "to the amount, value or extent of." The insured would read the word "for" as meaning "by reason of" or "because of, on account of." See Black's Law Dictionary (Rev. 4th Ed., 1968); Webster's 3d New International Dictionary (1967). See also Lumbermens Mutual Casualty Co. v. Yeroyan, 90 N. H. 145 (5 A2d 726) (1939); American Ins. Co. v. Naylor, 103 Colo. 461 (87 P2d 260) (1939).

In view of this ambiguity, that interpretation which favors the insured prevails. *Liberty Mut. Ins. Co. v. Mead Corp.,* supra. We find that this insurance policy covered punitive damages of the type here in issue. In this connection we note that although there is an exclusion as to known criminal acts, there is no exclusion as to punitive damages arising from acts which are not crimes.

The insurer next urges that contracts which insure against punitive damages are illegal as a matter of public policy. It argues that the deterrent effect of punitive damages is lost when such damages are paid by the insurer. This appears to be a question of first impression in Georgia. However, it has been held that it is not against public policy to insure against damages for wilful and wanton misconduct. *Travelers Indem. Co. v. Hood,* 110 Ga. App. 855 (140 SE2d 68) (1964). Courts of other jurisdictions are divided on the question. See Northwestern Nat. Casualty Co. v. McNulty, 307 F2d 432 (5th Cir., 1962); Lazenby v. Universal Underwriters Ins. Co., 214 Tenn. 639 (383 SW2d 1) (1964); 7 Appleman's Ins. Law and Practice, § 4312 at 86 (Cum. Supp. 1972). In our opinion the question has been resolved in Georgia by Acts of the Legislature.

"[C]ourts cannot declare agreements or acts authorized by statute to be contrary to public policy." 17 AmJur2d 538, Contracts, § 177. As stated in *Board of Lights &c. v. Dobbs,* 151 Ga. 53, 56 (105 SE 611) (1920), "In the absence of express legislative authority it might

well be said . . . that such contracts were against public policy. But it has nowhere been held, so far as we are aware, that where the legislature has expressly provided for such contracts, such legislative authority is illegal and contrary to public policy. The expression of the legislature is conclusive on the question of public policy."

The Georgia Insurance Code (Code Ann. § 56-101 et seq.), authorizes the issuance of liability insurance. Code Ann. § 56-408 (1) provides, "Liability insurance, which is insurance against *legal liability* for . . . damage to property. . ." (Emphasis supplied.) Punitive damages is a legal liability and accordingly insurance against such damages is expressly authorized. This conclusion is fortified by Code Ann. § 56-408 (11) which provides, "Miscellaneous insurance, which is insurance against any other kind of loss, damage or liability properly a subject of insurance and not within any other kind of insurance as defined in this Title, if such insurance is not disapproved by the Commissioner as being contrary to law or public policy." In our opinion these enactments conform to the general policy that the freedom to contract should not be curtailed on public policy grounds unless the case is free from doubt. *Equitable Loan &c. Co. v. Waring,* 117 Ga. 599 (1, 2) (44 SE 320) (1903).

*Judgment reversed. All the Justices concur, except Jordan and Hill, JJ., who dissent.*

ARGUED NOVEMBER 8, 1976 — DECIDED JANUARY 27, 1977 — REHEARING DENIED FEBRUARY 14, 1977.

*Hurt, Richardson, Garner & Todd, W. Seaborn Jones, Paul M. Talmadge, Jr.,* for appellant.

*Powell, Goldstein, Frazer & Murphy, Frank Love, Jr., Scott M. Hobby,* for appellee.

HILL, Justice, dissenting.

The majority relies upon *Board of Lights &c. v. Dobbs,* 151 Ga. 53, 56 (105 SE 611) (1920). There an Act of the General Assembly authorized the Board of Lights and Waterworks to appoint a treasurer and pay him a salary. The court held that it could not be against public policy to

compensate the treasurer because the General Assembly had authorized such compensation.

The majority relies on Code Ann. § 56-408. Those are definitions of various types of casualty insurance. In my view a definition is not invariably an authorization. For example, see Code Ann. § 26-1801 defining elements of the various crimes of theft.

In my view the majority errs in applying the express statutory authorization in the *Dobbs* case, supra, to the general statutory definition of casualty insurance and concluding that the General Assembly has determined that it is not against the public policy of this state for insurance companies to pay punitive damages awarded to deter wilful and wanton misconduct.

In my view the General Assembly has not considered this question and has not decided this case. It therefore is up to the courts to determine the public policy question here in issue.

The insurance company urges that punitive damages should not be covered by insurance as a matter of public policy because the deterrent effect of punitive damages would be sacrificed if such damages were payable not by the insured but by the insurer. The insurance company urges us to adopt the McNulty rule, Northwestern Nat. Casualty Co. v. McNulty, 307 F2d 432 (5th Cir. 1962), where the named insured, a speeding drunken driver, rear-ended McNulty's car and fled without stopping to render aid. There a divided court held that public policy prohibits insurance against liability for punitive damages, reasoning that (307 F2d at 440): "The policy considerations in a state where, as in Florida and Virginia, punitive damages are awarded for punishment and deterrence, would seem to require that the damages rest ultimately as well as nominally on the party actually responsible for the wrong. If that person were permitted to shift the burden to an insurance company, punitive damages would serve no useful purpose. Such damages do not compensate the plaintiff for his injury, since compensatory damages already have made the plaintiff whole. And there is no point in punishing the insurance company; it has done no wrong. In actual fact, of course, and considering the extent to which the public is insured,

the burden would ultimately come to rest not on the insurance companies but on the public, since the added liability to the insurance companies would be passed along to the premium payers. Society would then be punishing itself for the wrong committed by the insured." See also Crull v. Gleb, 382 SW2d 17 (Mo. App. 1964); Nicholson v. American Fire &c. Ins. Co., 177 S2d 52 (Fla. App. 1965).

The insured urges us to adopt the Lazenby rule (Lazenby v. Universal Underwriters Ins. Co., 214 Tenn. 639 (383 SW2d 1) (1964)), where the named insured, driving while intoxicated, caused personal injuries to another and the court held that the punitive damage award was covered by insurance. See also Carroway v. Johnson, 245 S. C. 200 (139 SE2d 908) (1965).

In American Surety Co. of N. Y. v. Gold, 375 F2d 523 (10th Cir. 1967), the court noted that the case law is almost equally divided numerically and followed McNulty. But see Southern Farm Bureau Cas. Ins. Co. v. Daniel, 246 Ark. 849 (440 SW2d 582) (1969), and Abbie Uriguen Olds, Buick, Inc. v. U. S. Fire Ins. Co., 95 Idaho 501 (511 P2d 783) (1973), following Lazenby.

I would decline to adopt either rule absolutely and would find instead that, in view of the division among the authorities, the better rule is a case by case determination. Even the McNulty court recognized that in states where an employer can be liable for punitive damages for injuries caused by an employee (see *Gasway v. Atlanta & W. P. R. Co.,* 58 Ga. 216 (1877)), it is not against public policy for an employer to protect himself by obtaining insurance covering a punitive damage award. See cases cited in 307 F2d at 439. See also Ga. Cas. Co. v. Alden Mills, 156 Miss. 853 (127 S. 555) (1930); Ohio Casualty Ins. Co. v. Welfare Finance Co., 75 F2d 58 (8th Cir. 1934). Hence, it should not be said that public policy forbids all insurance coverage of punitive damages.

I could readily agree that the drunken hit and run driver in McNulty and the demolition derby driver in Crull v. Gleb, supra, should not have insurance protection for the punitive damages awarded against them personally. However, we should not hold that all punitive

damages are uninsurable as a matter of public policy. For example, under the facts set out in *Harris, Inc. v. Black,* 130 Ga. App. 867 (204 SE2d 779) (1974), it would appear that a punitive damage award might be insurable.

Thus, we have at least two distinct situations, as follows: (1) Where the insured himself acts wilfully, intentionally, maliciously or fraudulently, it should be against public policy to allow him to pass responsibility for punitive damages on to his insurer. See Judge Gewin's specially concurring opinion in McNulty, supra, 307 F2d at 443, 445. (2) On the other hand, where an insured employer is found to be liable for punitive damages by reason of vicarious liability and where the employer was otherwise free from fault, public policy should not prohibit coverage of punitive damages by insurance protecting the employer. The same would be true of family purpose car cases and certain suits against auto leasing companies if punitive damages are recoverable in such cases. See, for example, Concord General Mut. Ins. Co. v. Hills, 345 FSupp. 1090 (1972); Universal Ind. Ins. Co. v. Tenery, 96 Colo. 10 (39 P2d 776) (1934).

In the case before us the insured is a corporation which can act only through employees and agents. In this respect, the insured here is analogous to the employer in situation numbered two above in that it was not the personal action of this insured which caused the damage. On the other hand, it is not entirely clear that the corporation was free from fault or that it should be entitled to pass punitive damages on to its insurance carrier. For example, the record shows that the corporation was put on notice of the Bozemans' contentions and that the corporation removed the marker after being notified not to remove it.

There being issues of fact (e.g., the fault, if any, of the corporation) and law (e.g., the insurer's duty, if any, to defend a suit for punitive damages) which are unresolved, in my view this case should be remanded for further proceedings.

I am authorized to state that Justice Jordan joins in this dissent.