### 75724. MAG MUTUAL INSURANCE COMPANY v. GATEWOOD et al.
(367 SE2d 63)

POPE, Judge.

MAG Mutual Insurance Company appeals from the denial of its motion for summary judgment and the grant of summary judgment to appellee-defendants in a declaratory judgment action seeking a determination of the policy limits of a professional liability policy issued by it insuring the defendant doctors against alleged negligent acts occurring in 1983. MAG Mutual was first notified of the allegations of medical malpractice by the defendant doctors on December 7, 1984. Appellees Larry and Lisa Jackson sued the doctors on October 25, 1985 on behalf of their infant child, who was severely brain damaged at his birth on October 31, 1983. This declaratory judgment action was brought on October 6, 1986, after appellees claimed that the policy, as amended upon renewal in 1984, insured the alleged negligent acts with primary coverage in the amount of $1,000,000, and excess coverage of $100,000 per person and $300,000 total. MAG Mutual

contended that the total liability coverage was limited to $100,000/$300,000, but also argued that if the court should find the plain language of the policy to be otherwise, then it should reform the policy because of a mutual mistake of the parties. MAG Mutual filed various interrogatories and requests for admission from the doctors attempting to elicit evidence of the doctors' intent as to the limits of the policy. Upon objections on the grounds of irrelevancy, inadmissibility and prejudice MAG Mutual filed motions to compel discovery, which were heard by the court, but no written order was issued thereon.

After hearing arguments and considering all of the evidence submitted, the trial court found that the policy, a copy of which was attached to MAG Mutual's complaint, was jurisdictive both of the declaratory judgment action and the underlying medical malpractice claim, providing both primary and excess liability coverage. The court further found that although it was a "claims made" policy, it distinguished between claims made based on acts performed *before* January 1, 1984 and on acts performed *after* January 1, 1984 in regard to the liability limits. Since the acts upon which the Jacksons' claim was based occurred before January 1, 1984, but the claim was "made" after that date on December 7, 1984, the question to be determined was whether both the primary and the excess coverage were different depending upon the time the acts were performed, as contended by MAG Mutual; or whether only the excess coverage would be different, as asserted by the defendants. To resolve this question, the trial court looked first to the policy itself.

The "Introduction Page" of this policy set forth the following limits of coverage:

| Agreements and Endorsements included | Number | Limits of your coverage | | Premium |
|---|---|---|---|---|
| Physicians Professional Liability Claims Made | 1 | Each Person $1,000,000 | Total Limit $1,000,000 | $16,655 |
| Employee Professional Liability Endorsement | | Shared Limits | Shared Limits | |
| Professional Excess Liability Endorsement (See Prof. Lia. End. #1) | | Each Person $1,000,000 | Total Limit $1,000,000 | included |
| Other Restrictive Endorsement #2 | | | | -0- |
| | | | Premium Discount 9.9 % | $ 1,649 |
| | | | Total Premium | —$15,006 |

This policy is not effective until it's signed by an authorized representative of MAG Mutual.

Authorized Representative *Joseph W. Jacker, Jr.*

Countersigned at Atlanta, Georgia

Countersignature Date January 9, 1984

The endorsement page was as follows:

---

**Professional Liability Endorsement** **MAG Mutual**

---

| | |
|---|---|
| Insured's name and address<br><br>Gatewood & Gatewood, P.C.<br>205 S. Lee St.<br>Americus, GA 31709 | Endorsement number _____1_____<br>Attached to and forming a<br>part of policy number __0000/D/119442__ |
| Policy inception date ____1/1/84____<br>Policy expiration date ____1/1/85____ | Amount due MAG Mutual $ ____–0–____<br>Amount due insured $ ____–0–____ |

This endorsement is effective _____January 1, 1984_____

**It is understood and agreed that this endorsement amends the policy as follows:**

Each person and organization named under "Who's Protected" section of the Introduction Page is covered under this endorsement for professional liability claims which are in excess of your primary professional liability limits. We will pay $100,000 each person/$300,000 total limit for claims brought against the insured for acts performed from each individual's and organization's retroactive date to 1/1/84. We will pay $2,000,000 each person/$2,000,000 total limit for claims brought against the insured for acts performed from 1/1/84 to the expiration of this policy.

**Other terms**
All other terms of the policy remain the same.

| | |
|---|---|
| This endorsement must be signed only when it's issued after the effective date of the policy | Authorized Representative *Joseph W. Jackson Jr.* |
| 1/9/84 | Endorsement number __1__ to Insuring Agreement 1<br>Professional Liability Page 1 of 1 |

---

As found by the trial court, the primary coverage is identified on the policy introduction page as "Physicians Professional Liability Claims Made" in the amount of $1,000,000 each person and total limit. The excess coverage is identified on the introduction page as "Professional Excess Liability Endorsement," showing the limits of coverage as $1,000,000 both for each person and for total limit, but also referring to "Prof. Liab. End. #1," which endorsement page by its terms expressly pertains to excess liability coverage. The court also noted that the endorsement provided that "all other terms of the policy remain the same," further denoting that this endorsement was intended to encompass just excess, not primary, coverage. Thus, the court determined that only the excess coverage was restricted to claims based on acts performed after January 1, 1984, but that primary coverage included acts performed prior to that time. The trial

court based its conclusions on the clear and unambiguous language of the contract, as well as on the deposition testimony of Joseph W. Tasker, Jr., the vice president of MAG Mutual who was in charge of underwriting at the time the policy in dispute was issued and whose signature appears thereon. According to Tasker, before issuing this policy at least three members of the underwriting staff of MAG Mutual reviewed the contract to make sure it clearly expressed the intention of MAG Mutual, and in their opinion the policy was "absolutely not" unclear. Tasker testified that he would certainly expect both the insured and the insurance company to be bound by the liability limits as expressed in the policy.

In regard to MAG Mutual's reformation argument, the court found that because the policy was clear and unambiguous there were no grounds for such relief. It further observed that four days after the Jacksons' claim was "made" on December 7, 1984, MAG Mutual changed the policy for renewal in 1985 to provide that both the primary coverage and the excess coverage would be different depending on whether the act was performed before or after January 1, 1984. The court concluded that by making this change to provide the limited coverage in 1985 which it contended was already in effect in 1984, MAG Mutual had admitted that the intended coverage was different on the date the claim was made, thereby resolving any ambiguity in the 1984 policy.

1. On appeal MAG Mutual complains that nowhere in the policy is it stated that the provisions of the endorsement pertain only to the excess liability coverage and not to the underlying liability coverage; and that to the extent there is any ambiguity in the language of the the policy, OCGA § 13-2-3 makes the cardinal rule of construction to ascertain the intention of the parties. Thus, it contends summary judgment was not authorized.

Appellant's arguments are correct up to a point, but ignore other principles of law which we think are controlling here. " 'The cardinal rule in the construction of contracts is to ascertain the intention of the parties.' [Cit.] 'The language which the parties have used will be looked to for the purpose of finding that intention, which when it is once ascertained will prevail over all other considerations, in determining the nature of the agreement.' [Cits.] The question remaining is whether [the language] of the contract creates an ambiguity which may be explained by parol. A word or phrase is ambiguous 'when it is of uncertain meaning and may be fairly understood in more ways than one.' [Cit.] Language which is unambiguous will not be construed as ambiguous based on extrinsic circumstances. [Cit.]" (Indention omitted.) *Walton v. Datry*, 185 Ga. App. 88, 93-94 (363 SE2d 295) (1987).

Where the language of a contract is plain and unambiguous, no

construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance. *Jones v. Barnes*, 170 Ga. App. 762, 765 (318 SE2d 164) (1984). Accord *Heyman v. Fin. Prop. Developers*, 175 Ga. App. 146 (332 SE2d 893) (1985). "In order to be entitled to summary judgment, the insurer in [a] declaratory judgment action must show that as a matter of law, the facts established show that it is entitled to judgment. [Cits.] The opposing party must be given the benefit of all reasonable doubts and all favorable inferences. [Cit.] Thus, the question is whether the facts displayed at this juncture establish as a matter of law that the claimant[s] cannot recover on the policy. . . ." *Reynolds v. Transport Ins. Co.*, 178 Ga. App. 462 (343 SE2d 502) (1986).

"Insurance is a matter of contract and it is contract law rather than the underlying motives of the contracting parties that is ultimately controlling. [Cit.]" *Nat. Security Fire &c. Co. v. London*, 180 Ga. App. 198, 200 (348 SE2d 580) (1986). "The existence or non-existence of an ambiguity is itself a question of law for the court. [Cit.] If the court determines that there is an ambiguity, this does not automatically give rise to a jury question, however. [Cit.] At this point it becomes the duty of the court to attempt to resolve the ambiguity by applying the rules of construction set forth in OCGA § 13-2-2. [Cits.] It is only when the ambiguity remains after the statutory rules have been applied that the issue becomes one for the jury. [Cits.] . . . Moreover, in applying [these rules], we have consistently held that an insurance contract is to be strictly construed against the insurer and in favor of the insured. [Cits.] Our courts have further held that the insurer, having affirmatively expressed coverage in broad promissory terms, has a duty to define any limitations or exclusions clearly and explicitly. [Cit.]" (Indention omitted.) *Capital Ford Truck Sales v. U. S. Fire Ins. Co.*, 180 Ga. App. 413, 417-418 (349 SE2d 201) (1986). "In construing an insurance contract the test is not what the insurer intended its words to mean, but rather what a reasonable person in the insured's position would understand them to mean. Where such a provision is susceptible of two or more interpretations, the court will construe it most favorabl[y] to the insured. [Cit.]" *Gulf Ins. Co. v. Mathis*, 183 Ga. App. 323, 324-325 (358 SE2d 850) (1987). See generally *Travelers Ins. Co. v. Blakey*, 255 Ga. 699 (342 SE2d 308) (1986).

Given its ordinary significance, the language on the introduction page of the 1984 policy clearly expresses the coverage provided, as the trial court correctly found. The limit of $1,000,000 for each person listed under the heading "Physicians Professional Liability Claims Made" contains no reference to or incorporation of any qualifying endorsements, nor is there a cut-off date for retroactive application. No restrictions or modifications of that coverage are claimed by MAG Mutual to appear anywhere else in the policy. Only in the endorse-

ment, which refers in its opening sentence to "claims which are in excess of your primary professional liability limits," is it stated that this coverage insures acts performed after January 1, 1984. While MAG Mutual insists that this limiting language applies to both the primary and excess liability coverage, its vice president in charge of issuing the policy testified that he understood the introduction page to refer to primary coverage, and that the first sentence of the endorsement pertains to excess coverage, limited by the next sentence to $100,000/$300,000 retroactive to January 1, 1984. If the endorsement restriction was intended to apply to both primary and excess coverage, it should have recited this fact, rather than expressly stating that all other terms of the policy remained the same. As written it did not do so until the policy was amended and renewed in 1985, and such provisions require a narrow construction. *Alley v. Great American Ins. Co.*, 160 Ga. App. 597, 600 (287 SE2d 613) (1981).

Therefore, the trial court properly ruled that the 1984 contract language clearly and unambiguously afforded primary coverage in the amount of $1,000,000 during the time appellees' claim arose, i.e., when the alleged negligent acts were performed in 1983, and no further application of the rules of construction was necessary. The reference in the last sentence of the endorsement to payment of "$2,000,000 each person/$2,000,000 total limit for claims brought against the insured for acts performed from 1/1/84 to the expiration of this policy," assuming that it raises any ambiguity, is also concerned only with coverage after January 1, 1984, and thus is not relevant to the claim in the instant case.

2. MAG Mutual's argument that in all cases where the form of the contract does not clearly express the intention of the parties the court is required to intervene in equity to reflect the true intention of the parties cannot be sustained. " 'A mistake relievable in equity is some unintentional act, omission, or error arising from ignorance, surprise, imposition, or misplaced confidence.' OCGA § 23-2-21. Where reformation is sought on the ground of mutual mistake, it must, of course, be proved to be the mistake of both parties. [Cit.] We have examined the record in this case and find no evidence of mutual mistake. '(E)quity will reform a written instrument for the unilateral mistake of one party accompanied by fraud or inequitable conduct on behalf of the other party.' [Cit.] There is likewise no evidence of fraud or inequitable conduct in the record before us." *A. J. Concrete Pumping v. Richard O'Brien Equip. Sales*, 256 Ga. 795, 796 (353 SE2d 496) (1987). "As far as the evidence shows, the [policy] was drafted at the direction of only one of the contracting parties, the [insurer], and therefore if it was a mistake, it was a unilateral mistake, which will not warrant reformation. [Cit.]" *Cox v. Smith*, 244 Ga. 280, 283 (260 SE2d 310) (1979). The 1984 insurance policy was

written and closely reviewed by MAG Mutual's underwriting staff before it was signed and delivered to the defendant doctors, and the failure to discover any alleged uncertainties or ambiguities prior to delivery precludes any equitable reformation.

3. MAG Mutual's enumeration of error concerning the trial court's denial of its motion to compel discovery contends that these interrogatories and requests for admissions were essential to prove ambiguities in the policy language and to support its reformation claim by showing the intent and understanding of the parties. In view of the trial court's rulings, and our affirmance of them, this discovery was neither relevant nor reasonably calculated to lead to the acquisition of any admissible evidence. Although the permissible scope of discovery is very broad under OCGA § 9-11-26 (b) (1), we find no abuse of discretion here in denying MAG Mutual's motion to compel. Accord *Reece v. Selmonosky*, 179 Ga. App. 718 (2) (347 SE2d 649) (1986).

*Judgment affirmed. Birdsong, C. J., and Deen, P. J., concur.*

DECIDED FEBRUARY 15, 1988 —
REHEARING DENIED MARCH 3, 1988 — 

*Thomas S. Carlock, Johannes S. Kingma*, for appellant.
*Michael A. Fennessy, N. Karen Deming, James E. Butler, Jr., James W. Hurt, William U. Norwood, Robert L. Pennington*, for appellees.