## A89A1717. ROMAN v. TERRELL et al.
### (393 SE2d 83)

SOGNIER, Judge.

Betty Roman filed suit against Teresa Terrell, an uninsured motorist, seeking to recover for injuries sustained in an automobile collision allegedly caused by reckless and negligent driving on Terrell's part. Both Terrell and Roman's uninsured motorist carrier, Motors Insurance Corporation ("MIC"), were served; and both filed responsive pleadings. A jury returned a verdict in favor of Roman for actual damages in the amount of $15,600 and punitive damages in the amount of $24,000. The trial court entered judgment against both Terrell and MIC for the actual damages but declined to enter judgment against MIC for the punitive damages. Roman appeals.

1. Appellant contends that MIC waived the right to contest its liability for the punitive damages by failing either to deny such liability in its answer or to raise the issue during the pretrial proceedings in the case. However, MIC's answer contains an express denial of liability for punitive damages, and it appears that the pretrial order was never signed by the judge. "Until an order is signed by the judge it is ineffective for any purpose." *Majors v. Lewis*, 135 Ga. App. 420, 421 (218 SE2d 130) (1975). Thus, we find no basis in the record for a conclusion that MIC waived consideration of its contention that it could not be held liable for punitive damages.

2. Appellant also contends the trial court erred by refusing to enter judgment on the jury's verdict for punitive damages against MIC where, as here, the tortfeasor is known and has been served. In *State Farm Mut. Ins. Co. v. Kuharik*, 179 Ga. App. 568 (347 SE2d 281) (1986), and *Coker v. State Farm Mut. Ins. Co.*, 193 Ga. App. 423 (388 SE2d 34) (1989), this court held that an award of punitive damages against an uninsured motorist carrier was improper. In *Kuharik*, the tortfeasor was unknown, and we reasoned that such an award would be totally ineffective to deter future misconduct on the part of the tortfeasor. In *Coker* we employed this same rationale to hold that an uninsured motorist carrier could not be held liable for punitive damages based on the conduct of a tortfeasor whose identity was known but whose whereabouts were unknown and over whom the trial court had consequently never acquired jurisdiction. However, on that same date we held, in *State Farm Mut. &c. Ins. Co. v. Weathers*, 193 Ga. App. 557 (388 SE2d 393) (1989) that an uninsured motorist carrier *may* be held liable for punitive damages based on the conduct of a known tortfeasor over whom the trial court *has* acquired personal jurisdiction, reasoning that in contrast to the situation in *Kuharik* and *Coker*, supra, payment of punitive damages by the uninsured motorist coverage carrier in such a situation could have at least a potential deterrent effect against the tortfeasor, since the insurer presuma-

bly can pursue a subrogation claim against him to obtain reimbursement of the award. See OCGA § 33-7-11 (f).

We find that *Weathers* was incorrectly decided. In *Weathers*, OCGA § 33-7-11 (a) (1) was quoted as requiring that uninsured motorist insurance provisions undertake " 'to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle.' " *Weathers* reasoned that since the language was plain, and remedial statutes must be construed liberally, the quoted language "militate[s] against a finding that an exception for punitive damages should be carved out of the statutory language, 'all sums.' " Id. at 558.

But the language of OCGA § 33-7-11 (a) (1) is not nearly so thin as that quoted in *Weathers*. In actuality the statute provides that "[n]o automobile liability policy or motor vehicle liability policy shall be issued . . . unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle . . . *because of bodily injury to or death . . . and . . . because of injury to or destruction of property of the insured. . . .*" (Emphasis supplied.) Although *Weathers* found "no reason in either law or logic for ignoring the statute's plain language . . . and making an exception for punitive damages," we find that this language is not "plain" but requires construction to ascertain its meaning, and, contrary to the pronouncement in *Weathers*, supra at 558, it does not "defy logic" to interpret it as requiring an uninsured motorist insurer to cover only compensatory damages.

Typically, uninsured motorist insurance statutes fall into two categories: those which require that the insurer must provide coverage for "all sums" the insured could recover as damages from the tortfeasor, and those which require that the carrier must provide coverage for "all sums" the insured could recover from the tortfeasor "for" or "because of" or "on account of" bodily injury or property damage. Courts interpreting statutes in the former category have usually found the statutory language "plain" and permitted the recovery of punitive damages, while many courts interpreting statutes in the latter category have construed the statutes to provide for compensatory damages only, and have held that punitive damages are not recoverable from uninsured motorist carriers. See generally Annot., Punitive Damages As Within Coverage of Uninsured Or Underinsured Motorist Insurance, 54 ALR4th 1186. Although the Georgia statutory language falls into the latter category, *Weathers* quoted only that part of the statute which is similar to the language of the *former* category, and went on to conclude that because the quoted language was broad and plain, and did not limit recovery at all, it should include punitive damages.

However, our statute requires an uninsured motorist carrier to compensate its insured for all sums the insured could recover from the tortfeasor *because of bodily injury or property damage.* Contrary to the conclusion in *Weathers*, this language does not necessarily include punitive damages within the statute's purview. Punitive damages are not awarded "because of" the bodily injury or property damage sustained by the victim, but rather "because of" some aspect of the tortfeasor's conduct which caused the victim's loss: wilfulness, perhaps, or some other aggravating circumstance which prompts the desire to punish the wrongdoer and prevent similar conduct in the future. Thus, because an award of punitive damages stems from the tortfeasor's conduct rather than from the victim's bodily injury or property damage, it cannot be said that the language of OCGA § 33-7-11 (a) (1) is plain and clearly includes punitive damages. Accordingly, that conclusion in *Weathers*, supra, is incorrect.

3. (a) As we have determined that the meaning of OCGA § 33-7-11 (a) (1) is not plain, we begin our analysis of the question of whether punitive damages are recoverable from an uninsured motorist carrier where the tortfeasor is known and served by applying the principles of statutory construction to the statutory language. It is elementary that "[i]n all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly." OCGA § 1-3-1. In attempting to discern the intention of the legislature, a "construction which will uphold a statute in whole and in every part is to be preferred." *Exum v. City of Valdosta*, 246 Ga. 169, 170 (1) (269 SE2d 441) (1980). We must assume the legislature included the phrases "because of bodily injury . . . " and "because of injury to or destruction of property of the insured" for a reason, rather than including phrases which are meaningless because the phrase "all sums the insured shall be legally entitled to recover" is sufficient to convey the intended meaning. Moreover, the fact that punitive damages are omitted while damages "because of" bodily injury and property damage are mentioned invites the application of the venerable principle of statutory construction *expressio unius est exclusio alterius*: the express mention of one thing implies the exclusion of another; or the similar maxim more usually applied to statutes, *expressum facit cessare tacitum*, which means that if some things (of many) are expressly mentioned, the inference is stronger that those omitted are intended to be excluded than if none at all had been mentioned. See *Bailey v. Lumpkin*, 1 Ga. 392, 403-404 (1846). Thus, the purely technical application of the rules of statutory construction favors the conclusion that, contrary to the declaration in *Weathers*, supra, the legislature's intention was to permit recovery only of compensatory, and not punitive damages.

(b) Moreover, although the statutory language possibly might

permit a construction allowing recovery of punitive damages, we find more persuasive the policy arguments in favor of excluding them.

As to the distinction found in *Weathers* because the tortfeasor is known and has been served, any potential deterrent effect against the tortfeasor created by the insurer's right to pursue a subrogation claim against him to obtain reimbursement of the award, is ephemeral at best. The reality is that most uninsured motorists are judgment proof, or at least difficult judgment debtors against whom to satisfy judgments. The uninsured motorist insurance statute was designed to compensate their victims for this reason. Thus, the prospect of the insurer satisfying its subrogation claim is dim. Further, in the unlikely event that there *are* assets to be levied on, the victim will have a judgment for punitive damages against the tortfeasor and can reach them. This court has twice held that punitive damages are not recoverable in an uninsured motorist context. *Kuharik*; *Coker*, supra. We see no crucial distinction between known or unknown, served or unserved uninsured motorists in this regard, and extend the holdings in *Kuharik* and *Coker* to the situation presented here.

We are persuaded by the logic of the court in *Braley v. Berkshire Mut. Ins. Co.*, 440 A2d 359 (Me. 1982), that "[a]llowing punitive damages to be awarded against an insurance company can serve no deterrent function because the wrongdoer is not the person paying the damages. . . . '[T]here is no point in punishing the insurance company; it has done no wrong. In actual fact, of course, . . . the burden would ultimately come to rest not on the insurance companies but on the public, since the added liability to the insurance companies would be passed along to the premium payers. Society would then be punishing itself for the wrong committed by the [tortfeasor].' [Cit.]" Id. at 362. See also *Burns v. Milwaukee Mut. Ins. Co.*, 360 NW2d 61, 64-65 (Wis. App. 1984). This cannot be the intended purpose of our statute.

Although it is true, as pointed out in *Weathers,* that in Georgia recovery of punitive damages has been held not to violate public policy *per se* in the context of *liability* coverage, see *Greenwood Cemetery v. Travelers Indem. Co.*, 238 Ga. 313 (232 SE2d 910) (1977), at least some relationship to deterrence is possible in the liability insurance area, because it is the tortfeasor *insured's* premiums which would be raised to cover the carrier's payout. In the context of uninsured motorist coverage, the victim claimant is the insured, and no deterrent effect is possible through direct premium increases.

Therefore, because we find the proper construction of the statute, as well as the proper public policy of this state, is that no recovery of punitive damages may be had against an uninsured motorist carrier, *Weathers*, supra, is overruled, and we affirm the trial court's judgment in this case.

*Judgment affirmed. McMurray, P. J., Birdsong, Beasley and Cooper, JJ., concur. Carley, C. J., Banke, P. J., and Pope, J., concur specially. Deen, P. J., dissents.*

BANKE, Presiding Judge, concurring specially.

I agree that motor vehicle insurers are not required by OCGA § 33-7-11 (a) (1) to provide uninsured motorist coverage for punitive damage claims. However, I do not agree with the majority's conclusion, expressed in Division 3 (a) of its opinion, that "the purely technical application of the rules of statutory construction" necessarily favors this interpretation. The words "because of bodily injury" and "because of injury to or destruction of property of the insured" appear in subdivisions (A) and (B), respectively, of § 33-7-11 (a) (1), dealing with the limits of the required coverage. Thus, in the context in which they are used, they may be construed as a limitation merely on the *amount* of coverage required to be made available, which differs between these two categories. So construed, these phrases would provide a meaningful qualification of the requirement that coverage be provided for "all sums the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle," without necessarily excluding coverage for punitive damages.

Nevertheless, I do not believe the Legislature intended to require automobile insurers (and ultimately, as the majority points out, premium payers generally) to cover claims for punitive damages arising from wrongs committed by uninsured motorists. "It has been held that the Legislature's purpose in enacting the Georgia uninsured motorist statute was 'to protect the insured as to his actual loss.' *State Farm &c. Ins. Co. v. Murphy*, 226 Ga. 710, 714 (177 SE2d 257) (1970)." *Dacosta v. Allstate Ins. Co.*, 188 Ga. App. 10, 11 (372 SE2d 7) (1988). Viewed in the light of that purpose, the terminology, "all sums the insured shall be legally entitled to recover as damages," may reasonably be interpreted as encompassing only actual damages. Indeed, our holdings in *State Farm Mut. Ins. Co. v. Kuharik*, 179 Ga. App. 568 (347 SE2d 281) (1986), and *Coker v. State Farm Mut. Ins. Co.*, 193 Ga. App. 423 (388 SE2d 34) (1989), are implicitly based upon such a construction, for if the "all sums" terminology unambiguously encompassed punitive damages, there would be no basis for refusing to hold the insurer liable for such damages in cases where the identity or whereabouts of the uninsured tortfeasor is unknown. I therefore concur in the overruling of *State Farm Mut. Ins. Co. v. Weathers*, 193 Ga. App. 557 (388 SE2d 393) (1989), and in the affirmance of the trial court's judgment in the present action.

I am authorized to state that Chief Judge Carley and Judge Pope join in this special concurrence.

DEEN, Presiding Judge, dissenting.

I would not necessarily disagree with the majority's contention that, as a matter of public policy, it might be preferable that punitive damages not be recoverable in an action for uninsured motorist benefits. It is the legislature, however, and not the courts, to which belongs the prerogative of incorporating public policy considerations into the laws which the courts are bound to uphold. It is what the law says, not what we might wish it to say, that is binding on the courts.

In the instant case the statutory language, when read according to the statutory directive, OCGA § 1-3-1 (b), plainly and unambiguously permits the recovery of "all sums" recoverable "as damages." OCGA § 33-7-11 (a) (1). Thus to overrule *State Farm Mut. &c. Ins. Co. v. Weathers*, 193 Ga. App. 557 (388 SE2d 393) (1989), which relies on the plain and unambiguous language of § 33-7-11 (a) (1), as the majority proposes to do, would be contrary to the letter and spirit of applicable law.

"In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly." OCGA § 1-3-1 (a). "It has been held that the Legislature's purpose in enacting the Georgia uninsured motorist statute was 'to protect the insured as to his actual loss.' *State Farm &c. Ins. Co. v. Murphy*, 226 Ga. 710, 714 (177 SE2d 257) (1970)." *Dacosta v. Allstate Ins. Co.*, 188 Ga. App. 10, 11 (372 SE2d 7) (1988). Punitive or exemplary damages are those awarded "over and above what will barely compensate him for his . . . loss, where the wrong . . . was aggravated [i.e., made greater or worse] by . . . the defendant." Black's Law Dictionary (4th ed., 1957), p. 467. It is axiomatic that aggravation of the original wrong results in additional — or greater — loss, so that damages awarded as "punitive" or "exemplary" serve the dual function of deterring the tortfeasor and of mitigating the aggravation. If the legislature had intended to exclude punitive damages from the scope of the Code section, it could have done so simply by specifying that uninsured motorist coverage would apply to "all compensatory damages" recoverable by the insured due to the operation of an uninsured motor vehicle, rather than to "all sums" recoverable by the insured "as damages."

We find the "all sums" terminology to be as inclusive as any language that might have been used in expressing the legislative intent. See *State Farm &c. Ins. Co. v. Murphy*, 226 Ga., supra at 714. As noted in the concurring opinion, the subsequent language, "because of bodily injury" and "because of injury to or destruction of property of the insured," appears in subdivisions (A) and (B), respectively, of § 33-7-11 (a) (1), dealing with the limits of the required coverage. When read in proper context, this terminology is merely a limit on the *amount* of coverage required to be made, such amounts differing in the two categories covered in (A) and (B). Thus properly construed,

these limiting phrases provide a meaningful qualification of the requirement that coverage be provided for "all sums the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." To read this language as necessarily excluding punitive damages would require one to take the position that such damages do not arise "because of" bodily injury or property damage. In view of the plain language of the statute (and also of the well-settled principle that arguably ambiguous language must be resolved in favor of the insured), to take such a position would be patently absurd. Thus, although we recognize the validity of the time-honored principles expressed in the Latin maxims quoted in the majority's analysis of § 33-7-11 (a) (1), we find them inapposite to the majority's contention that the statute does not include punitive damages and that *Weathers* should therefore be overruled.

Further, careful analysis of *Coker v. State Farm Mut. Ins. Co.*, 193 Ga. App. 423 (388 SE2d 34) (1989) and *State Farm Mut. Ins. Co. v. Kuharik*, 179 Ga. App. 568 (347 SE2d 281) (1986), as well as of *Weathers*, reveals no conflict whatsoever between the rationale of *Weathers* and that of *Coker* and *Kuharik*. The holding in each of the three cases is appropriate in the fact situation of each. The fact that in *Weathers* the tortfeasor is known *and* is subject to the trial court's personal jurisdiction clearly distinguishes *Weathers* from the other two cases and renders not only unnecessary, but incorrect, any notion that the holdings in *Kuharik* and *Coker* mandate a reversal of *Weathers*. *Kuharik*, in fact, expressly leaves open the question presented in the instant case and in *Weathers*: "Whether an uninsured motorist carrier could be held liable to its policyholder for punitive damages based on the misconduct of a known tortfeasor over whom the court had acquired personal jurisdiction."

Moreover, like the author of the concurring opinion, I disagree with the majority's assertion (Division 3 (a)) that "the purely technical application of the rules of statutory construction" would favor the conclusion that the legislature's intention was to permit recovery only of compensatory, not punitive, damages. The majority's public policy arguments are by no means unpersuasive or devoid of validity, *as far as they go*. A far more comprehensive and persuasive public policy analysis would be required, however, before I would feel compelled, in the face of the unambiguous statutory language, to adopt the extreme and essentially illogical position taken by the majority. Compare, e.g., *Emory Univ. v. Porubiansky*, 248 Ga. 391 (282 SE2d 903) (1981).

The worst-case scenario proposed by the majority (Division 3) — that "most uninsured motorists are judgment-proof" — is a risk inherent in the nature of uninsured motorist coverage and as such properly falls upon the insurer, not the insured. The insured, whose loss has been increased by the aggravating circumstances not only intangi-

bly but usually substantively as well, will find cold comfort in the majority's bland assurance that "in the . . . event that there *are* assets to be levied on, the victim [insured] will have a judgment for punitive damages against the tortfeasor and can reach them." What is the rationale of requiring the motorist to pay premiums for uninsured motorist coverage when in the end he himself will be put to the trouble and expense of attempting to collect on his judgment?

Moreover, should the majority's dire prediction that "the added liability would be passed along to the premium payers" be realized, this would be no new thing and arguably would leave the premium-payer no worse off than he was already. It is our observation that there has often been no readily ascertainable or predictable relationship between the insurer's actual loss experience and the premiums charged the insured. Therefore, such a result as that predicted by the majority would be neither inevitable nor novel. In any case, a remedial statute must be construed to protect the insured (or victim) rather than the insurer.

In short, neither legislative intent, nor statutory language, nor the holdings in *Kuharik* and *Coker,* supra, dictates the result sought by the majority. I feel strongly that *Weathers* represents the correct approach to this complex of issues, and that that case should therefore not be overruled.

I must respectfully dissent.

DECIDED MARCH 16, 1990 —
REHEARING DENIED MARCH 29, 1990 — ▮▮▮▮▮▮▮

*Scott Walters, Jr.,* for appellant.
*Swift, Currie, McGhee & Hiers, Guerry R. Moore, William P. Claxton,* for appellees.
*Kathryn M. Weigand, William Q. Bird, Frank J. Beltran,* amicus curiae.