A95A2167. SHELTER MUTUAL INSURANCE COMPANY
v. BRYANT.
A95A2793. SHELTER MUTUAL INSURANCE COMPANY
v. GOOLSBY.
(469 SE2d 792)

POPE, Presiding Judge.

These two cases arise from the same April 5, 1991, automobile collision, which happened when Kenneth Steven Wigley, who was traveling more than 70 mph in a 35 mph zone, passed another car on a curve, lost control, crossed the centerline, and struck the vehicle which plaintiff Sharon Bryant was driving. Riding in the car with Bryant were her mother, daughter and niece, as well as her sister, plaintiff Sandra Goolsby, and Goolsby's daughter. Wigley was killed in the accident; analysis indicated that at the time of the accident, he had a blood alcohol level of .26 grams percent.

In Case No. A95A2167, Bryant sued Wigley's estate, through his administrator, for injuries she claimed resulted from Wigley's negli-

gent operation of his vehicle. She served Shelter Mutual Insurance Company ("Shelter") as the uninsured motorist carrier. The suit against Wigley's estate went into default, and Shelter defended the suit in its own name. See OCGA § 33-7-11 (d).

Prior to trial, Shelter moved to amend the pretrial order and amended its answer, admitting that Bryant was an insured under the policy, that Wigley was an uninsured motorist, and that the automobile accident was a covered policy event. Shelter also filed a motion in limine to exclude evidence of Wigley's intoxication from the trial. The court allowed Shelter to admit its liability under the policy, but denied the motion in limine regarding Wigley's intoxication.

In Case No. A95A2793, Sandra Goolsby, Bryant's sister, sued Wigley for injuries she claimed from his negligence and served Shelter as the uninsured motorist carrier. As in Bryant's case, the suit against Wigley's estate went into default, and Shelter answered the complaint in its own name. Shelter filed a motion to amend its answer to admit its contractual liability and a motion in limine regarding Wigley's intoxication, which the court denied.

The trials were conducted separately. At both trials, the investigating officer of the collision testified regarding the accident and testified to Wigley's blood alcohol level at the time of the accident. In both cases, a medical report confirming Wigley's blood alcohol content was also admitted. Bryant testified at both trials regarding the manner in which the accident occurred.

In Case No. A95A2167, there was evidence that, as a result of the accident, Bryant suffered an avulsion fracture in her right foot and incurred medical bills of $2,355. Medical testimony established that, as a result of the accident, Bryant suffered permanent nerve impairment and developed arthritis in her foot. Bryant testified that at the time of the trial, nearly four years after the accident, she still suffered pain from her injury.

In Case No. A95A2793, Goolsby testified that she suffered neck and back injuries in the accident and incurred $4,500 in medical bills. Goolsby testified that because of her injuries, she went to physical therapy 51 times and that she continued to have neck pain. Medical testimony was consistent with Goolsby's complaints.

At the conclusion of the evidence in both cases, the court charged the jury that because the complaint against Wigley's estate had gone into default, the estate had admitted Wigley's responsibility for the wreck and for any of the plaintiffs' injuries as proven by a preponderance of the evidence. The court further charged the jury that Shelter had admitted that it was responsible for the damages proximately caused by Wigley's wrongful acts in operating his car. Accordingly, the court directed a verdict on fault and responsibility against both of the defendants, and stated that since fault and responsibility were

not at issue, the jury's sole duty was to determine the amount of damages proximately caused by the accident. The court then charged the jury on proximate cause, compensatory damages, and damages for pain and suffering. The court charged that the award of damages was to compensate the plaintiff and not to unreasonably burden the defendant. No charge regarding the evidence on alcohol was given.

In Case No. A95A2167, the jury returned a $95,000 verdict for Bryant. In Case No. A95A2793, the jury returned a $60,000 verdict for Goolsby. Here, Shelter raises the same enumerations of error in both cases, and we will address them together.

1. In its first and second enumerations, Shelter claims error in the trial court's refusal to exclude evidence of Wigley's intoxication. First, Shelter claims the court erred in denying its motion in limine. Secondly, Shelter argues that the court erred in permitting the investigating officer to testify to Wigley's blood alcohol level and allowing into evidence a report corroborating this testimony. Shelter argues that because the trial involved only causation and damages, evidence regarding Wigley's intoxication was unduly prejudicial. Bryant and Goolsby contend that this evidence was relevant and admissible to give context to the accident and to establish the speed and force of the vehicles at the time of impact.

In resolving this issue, we are first mindful that an insurance company is not liable to its insureds under its uninsured motorist coverage for punitive damages. *State Farm &c. Ins. Co. v. Weathers*, 260 Ga. 123 (392 SE2d 1) (1990); *Roman v. Terrell*, 195 Ga. App. 219 (393 SE2d 83) (1990). The *Roman* court explained: "(a)llowing punitive damages to be awarded against an insurance company can serve no deterrent function because the wrongdoer is not the person paying the damages. . . ." Id. at 222. Accordingly, Bryant and Goolsby did not seek punitive damages in these cases.

Clearly, evidence regarding alcohol consumption is admissible when punitive damages are sought. *Moore v. Thompson*, 255 Ga. 236, 237 (336 SE2d 749) (1985); see generally OCGA § 51-12-5.1. That evidence of alcohol consumption is an aggravating circumstance in awarding punitive damages does not mean that such evidence is automatically inadmissible if punitive damages are *not* sought, however. See, e.g., *Beal v. Braunecker*, 185 Ga. App. 429, 430 (1) (364 SE2d 308) (1987) (alcohol consumption does not mandate finding that aggravating circumstances existed).

In these cases, there was no error in admitting this evidence since Wigley's alcohol consumption was inextricably linked to the accident, and to Wigley's negligence. Bryant's testimony regarding the accident was that Wigley was traveling more than twice the speed limit, that he lost control of the vehicle, crossed over the centerline, and ricocheted off a tree. In both cases, photographs of the vehicles at the

accident scene were admitted into evidence. All of this evidence was relevant to the jury's inquiry because although the court directed a verdict on negligence, the elements of proximate cause and damages were still subject to proof. See *Harrison v. Feather*, 211 Ga. App. 468 (1), 469 (439 SE2d 706) (1993) (admission of liability distinguishable from admission of negligence); compare *Dilworth v. Boeckler*, 187 Ga. App. 241 (370 SE2d 17) (1988).

In both trials, the court instructed the jury that the plaintiff was entitled "to be compensated for all such elements of damage as you determine to have been a direct result of the wrong in this case. You should award such an amount as will reasonably compensate her as far as money can do it for the injuries which she has sustained as a proximate result of any of the defendants' conduct." Wigley's "wrong" or "conduct" necessarily involved his alcohol consumption. See, e.g., *Cheevers v. Clark*, 214 Ga. App. 866, 868 (3) (449 SE2d 528) (1994) (" 'the conduct of the driver in hitting, running, and failing to stop, etc., is a circumstance which may be considered [in the liability phase of a bifurcated proceeding], in connection with his other acts preceding the injury, as tending to establish his conduct in causing the injury as being negligence.' [Cit.]"). The jury was entitled to consider Wigley's entire act of negligence in determining what caused Bryant's and Goolsby's injuries.

Our decision is supported by OCGA § 40-6-392 (a), which provides: "[u]pon the trial of *any civil* or criminal action or proceeding arising out of acts alleged to have been committed by any person in violation of Code Section 40-6-391, evidence of the amount of alcohol or drug in a person's blood . . . shall be admissible." (Emphasis supplied.) In the absence of statutory language indicating that cases involving uninsured motorist coverage are exempt from these provisions, we conclude that the trial court did not err.

2. Shelter claims that the verdicts were excessive, as a matter of law. We disagree.

"On appeal, we construe all evidence most strongly in support of the verdict, for that is what we must presume the jury did; and if there is evidence to sustain the verdict, we cannot disturb it. Since the verdict was within the range of damages established by the evidence, there was no error." (Citations and punctuation omitted.) *Crawford v. Presbyterian Home*, 216 Ga. App. 54, 56 (5) (453 SE2d 480) (1995); see also *Whitley v. Ditta*, 209 Ga. App. 553, 554-555 (2) (434 SE2d 108) (1993).

*Judgments affirmed. Ruffin, J., concurs. Beasley, C. J., concurs specially.*

BEASLEY, Chief Judge, concurring specially.

1. The problem here is that there was not a clear distinction

made between an admission of negligence and an admission of liability. Admitting negligence means that defendant admits there was a legal duty and a breach, the first two elements of a tort; admitting liability goes one step further and admits there was proximate cause, i.e., that defendant is liable for damages, whatever they are. Defendant admits duty, breach, and proximate cause. *Harrison v. Feather*, 211 Ga. App. 468 (1) (439 SE2d 706) (1993).

An admission of liability would make Wigley's intoxication irrelevant because the jury would not have to decide whether his condition caused or contributed to the collision rather than its occurring due to some other form of negligence. The whole scenario and course of the event could be explained to the jury, absent the evidence of intoxication, without jeopardizing their understanding of *what* happened. *Why* it happened, which examines the cause of defendant driver's actions and his vehicle, is not related to damages, which examines the extent of plaintiffs' injuries and what amount is necessary to compensate for them.

In Bryant's case, Shelter admitted "liability" and said only the question of damages remained. Plaintiff's counsel misunderstood and took it to mean only an admission of negligence. The court agreed that the case was to be tried only on the question of damages. That assumes an admission of proximate cause. Defendant made that distinction regarding the other two cases, where there was "at least an argument that at least a portion of the injury that was claimed did not relate to the automobile accident." The court ruled that, since the jury would need to know the way the defendant driver's car was swerving over the road from one side to the other and the crash occurred, i.e., *what* happened, the evidence of intoxication could be admitted to explain "why" these events occurred.

At the conclusion of the evidence presentation, the court instructed the jury: "I have directed a verdict against the defendants and in favor of the plaintiff establishing fault and responsibility as against both of the defendants. In other words, fault and responsibility will not be a concern in your deliberations and as such, I charge you that it will be your sole duty in your deliberations to determine the amount of damages, if any, proximately caused to the plaintiff as a result of her injury suffered in the motor vehicle collision in question . . . the question of damages [is] really the only issue that you have to decide in this case." Defendant Shelter does not challenge the court's charge.

The same general course transpired in Goolsby's case.

Although the evidence of intoxication was not a necessary ingredient for the jury's deliberation on the sole issue it had to decide in each case (damages), and it may have been better to omit it as irrelevant and arguably inflammatory due to the general public apprecia-

tion of the dangers of driving with one's ability impaired by alcohol, I agree that it was not an abuse of discretion such as to require a new trial. OCGA § 40-6-392 (a) expressly authorizes the admission of alcohol tests as evidence in civil and criminal actions, although the authorization relates only to instances in which the evidence is relevant to a determination of an issue in the case. Here it was of marginal utility.

2. I do not read *Beal v. Braunecker*, 185 Ga. App. 429, 430 (1) (364 SE2d 308) (1987), as supporting the proposition that evidence of alcohol consumption is admissible in cases in which punitive damages are not sought. Although I agree with the proposition, such evidence being admissible whenever it is relevant, the plaintiff in *Beal* did seek punitive damages, which were in issue.

DECIDED MARCH 8, 1996.

*Karsman, Brooks & Callaway, D. Campbell Bowman, Jr.*, for appellant.

*Jones, Boykin & Associates, Noble L. Boykin, Jr., Gilbert L. Stacy*, for appellees.