## A97A1533. LUNCEFORD v. PEACHTREE CASUALTY INSURANCE COMPANY.
### (495 SE2d 88)

Smith, Judge.

The issue in this appeal is whether an automobile insurance policy issued by Peachtree Casualty Insurance Company (Peachtree) covers punitive damages. We conclude that the broad language of the policy encompasses this type of coverage, and we therefore reverse the trial court's grant of summary judgment to Peachtree.

Terry Lunceford was involved in an automobile collision with Susan Brown. He filed suit against her and alleged, among other things, that she was driving while under the influence of alcohol. He sought damages for personal injuries and punitive damages. Peachtree, Brown's insurer, then brought this declaratory judgment action against Brown and Lunceford, contending that its policy did not cover punitive damages. The trial court concluded that the policy did not provide coverage for such damages and granted summary judgment to Peachtree. This appeal by Lunceford ensued.[1]

1. The insurance policy provides the following with regard to cov-

---

[1] The trial court entered a default judgment against Brown in favor of Peachtree based on Brown's failure to answer Peachtree's complaint for declaratory judgment.

erage: "We will pay, on behalf of an insured person, damages for which any insured person is legally liable because of bodily injury and property damage arising out of an accident involving your insured car or a non-owned car." We do not agree with Peachtree that this language plainly "does not provide coverage for punitive damages." On the contrary, the language of the policy leads to the opposite conclusion. The coverage language is broad, encompassing "damages" without limitation. Although it contains an exclusion for bodily injury or property damage caused by intentional acts, the policy does not contain an exclusion for punitive damages. And the law is clear in this state that an insurer, "having affirmatively expressed coverage in broad promissory terms, has a duty to define any limitations or exclusions clearly and explicitly." (Citations and punctuation omitted.) *MAG Mut. Ins. Co. v. Gatewood*, 186 Ga. App. 169, 173 (367 SE2d 63) (1988).

It is true, as argued by Peachtree, that the definitions section of the policy defines bodily injury, property damage, and accident without reference to punitive damages. And, as further argued by Peachtree, the policy does not expressly recite that it will pay "all sums" that could be recovered against its insured. But the failure to use this language or to specifically reference punitive damages in the definitions section does not prevent coverage. Had Peachtree wished not to cover or to exclude punitive damages, it could have done so clearly and specifically. It did not, and consequently, it is bound by the broad language of the policy.

Peachtree cites two decisions in support of its argument that the policy language plainly excludes coverage for punitive damages. Both are inapposite. Both involve statutory construction of legislation rather than interpretation of an insurance contract. In *O'Gilvie v. United States*, 519 U. S. _____ (117 SC 452, 136 LE2d 454) (1996) the United States Supreme Court interpreted 26 USC § 104 (a) (2) and examined the meaning of the language "damages received . . . on account of personal injuries or sickness" in the context of whether punitive damages were excluded from gross income for tax purposes. Recognizing the ambiguity of the phrase, 136 LE2d at 460, the court applied rules concerning statutory interpretation and concluded that punitive damages were not included within the phrase at issue. In *Roman v. Terrell*, 195 Ga. App. 219 (393 SE2d 83) (1990), relied on by the trial court, we considered whether punitive damages were recoverable from an uninsured motorist carrier. We construed former OCGA § 33-7-11 (a) (1) as requiring a UM carrier "to compensate its insured for all sums the insured could recover from the tortfeasor *because of bodily injury or property damage*." (Emphasis in original.) *Roman*, supra at 221 (2). Discussing the rationale behind awarding punitive damages, we did state that "[p]unitive damages are not

awarded 'because of' . . . bodily injury . . . but rather 'because of' some aspect of the tortfeasor's conduct which caused the victim's loss." Id. After concluding that the emphasized language was not plain, we used the rules of statutory construction and held that awarding punitive damages against a UM carrier did not serve as a deterrence against the wrongdoer. Id. at 222.

Relying on *Roman* and *O'Gilvie*, Peachtree argues that since punitive damages address the tortfeasor's behavior rather than monetary compensation for bodily injury, the phrase "because of bodily injury or property damage" in the insurance policy cannot encompass punitive damages. But Peachtree's reliance on *Roman* and *O'Gilvie* ignores important distinctions between them and this case.

Different Code sections apply with regard to contract construction and statutory interpretation. See OCGA § 13-2-2, which sets out general rules concerning contract construction. Rules of statutory interpretation, though similar in some respects, differ in focus. See OCGA § 1-3-1; *City of Buchanan v. Pope*, 222 Ga. App. 716, 717 (1) (476 SE2d 53) (1996). Notably, statutes are construed sometimes broadly, sometimes narrowly, depending on their legislative purpose. Compare *Smith v. Doe*, 189 Ga. App. 264, 265-266 (375 SE2d 477) (1988) (uninsured motorist legislation to be construed broadly to effectuate legislative purpose of indemnifying person legally entitled to recovery from uninsured motorist) with *McFrugal Rental of Riverdale v. Garr*, 262 Ga. 369 (418 SE2d 60) (1992) (narrow construction of statute allowing custodian of public records to charge fee, since statute is burden on right of access to public records). In construing ambiguous language in insurance contracts, however, those ambiguities must be construed against the drafter. OCGA § 13-2-2 (5); *Tifton Machine Works v. Colony Ins. Co.*, 224 Ga. App. 19, 20 (1) (480 SE2d 37) (1996). Here, we must examine the phrase as it appears in an insurance contract. Our analysis therefore must be governed through application of the rules of contract construction rather than those of statutory interpretation.

Examining this insurance policy and applying the rules concerning contract construction, we reiterate that the insurance policy does not clearly exclude punitive damages, and its coverage broadly addresses "damages." It is therefore reasonable to conclude on this ground that the policy provides coverage. But the argument can also be made that the language "because of bodily injury or property damages" is ambiguous. The phrase at issue here is comparable to that construed in *Greenwood Cemetery v. Travelers Indem. Co.*, 238 Ga. 313 (232 SE2d 910) (1977). The Supreme Court construed the word "for" in the context of a policy endorsement reciting that payment would be made "for mental anguish because of any professional malpractice, error or mistake in any conduct by the insured." (Punctua-

tion and emphasis omitted.) Id. at 316. The court found the word "for" to have several meanings: " 'equivalent to' " or " 'to the amount, value or extent of,' " as argued by the insurer, and " 'by reason of' or 'because of, on account of,' " as argued by the insured. Id. Because of this ambiguity, the court relied upon the longstanding rule that the "interpretation which favors the insured prevails. [Cit.]" Id.

Here, like the word "for" in *Greenwood*, the phrase "because of bodily injury or property damage" *could* reasonably be construed as meaning damages "equivalent to" or "to the extent of" compensation for bodily injury. In other words, the phrase could mean that the insurer would pay only those damages equal to the amount of damages for bodily injury or property damage. But as in *Greenwood*, another construction could be that the phrase means "by reason of" or "on account of." Under this alternative interpretation, the insurer would be required to pay for all damages for which the insured is legally liable because a claimant was injured or his property damaged, including punitive damages. This construction, too, is reasonable. And where two or more equally logical constructions are possible, the contract is ambiguous and must be construed against the insurer. *Greenwood*, supra at 316. See generally *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 716 (4) (470 SE2d 659) (1996). Accordingly, the phrase "because of bodily injury or property damages" must be construed against Peachtree as providing coverage for punitive damages under the latter interpretation.

We note Peachtree's reliance on Brown's application for insurance. Above her signature appears the following language in part: "Please be advised that this application for insurance does *not* include a request for punitive damage coverage. Punitive damages are damages which are sometimes awarded by a court or jury to *punish* or deter someone [whose] conduct is so irresponsible and without regard for the safety of others that punishment is in order." OCGA § 33-24-16 provides that "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any . . . application *made a part of the policy*." (Emphasis supplied.) See also *West v. Rudd*, 242 Ga. 393, 395, n. 1 (249 SE2d 76) (1978). But here, the application was not expressly made part of or incorporated by reference into the insurance policy, and in fact, it recites that Brown understands that it is not "a binder of coverage and may be bound, accepted, rejected, or modified by the company upon receipt." Because the application was not made part of the policy, we reject Peachtree's argument that it was entitled to partial summary judgment based on the application.

Moreover, even if the application *were* incorporated by reference into the policy, "[i]t does not follow . . . that the language of the

application form is controlling over the language of the policy if the two are in conflict." *Rogers v. Southeastern Fidelity Ins. Co.*, 181 Ga. App. 864 (354 SE2d 199) (1987). While the application form indicates that Brown did not request coverage, the form also indicates that Peachtree had no obligation to issue a policy on the same terms. The policy language, as discussed above, at best broadly covers *all* damages and, at worst, is ambiguous with respect to punitive damages and nevertheless must be construed against Peachtree. The application therefore merely adds another ambiguity, and we must continue to interpret the policy in favor of the insured. Id.

2. Peachtree also contends that "public policy precludes requiring a tortfeasor's insurer to pay for punitive damages awarded under OCGA § 51-12-5.1." It maintains that the language of this statute "unequivocally demonstrates" the legislature's intention that punitive damages punish or deter the tortfeasor and not that "tort defendants shift responsibility for punitive damage awards to an innocent insurer."

This argument is controlled adversely to Peachtree by our holding in *Fed. Ins. Co. v. Nat. Distrib. Co.*, 203 Ga. App. 763 (417 SE2d 671) (1992) that recovery of punitive damages in the liability context does *not* contravene public policy. Id. at 768 (3). Peachtree points out that we relied on *Greenwood*, supra, in *Federal* and argues that the statutory and analytical framework of *Greenwood* is not applicable to punitive damages in light of the enactment of OCGA § 51-12-5.1 after *Greenwood* was decided. But this argument ignores our express decision in *Federal* that the enactment of OCGA § 51-12-5.1 did not supersede the Supreme Court's holding in *Greenwood* that insurance against punitive damages is legislatively authorized. 203 Ga. App. at 768. See also *Greenwood*, 238 Ga. at 316.

Nor is the absence of *express* legislation actually reciting that liability insurance may cover punitive damages, as argued by Peachtree, fatal to recovery of such damages. It is true that the Supreme Court stated in *Greenwood*, "In the absence of express legislative authority it might well be said that such contracts were against public policy." (Punctuation omitted.) Id. at 316-317. But this language is dicta. The court stated only that insurance against punitive damages in the absence of legislation *might* be against public policy. Moreover, the absence of express legislation does not affect the freedom to contract. " '[I]t is axiomatic that, as long as the provisions of a given contract are in compliance with the requirements of governing statutes, the parties to the contract may include provisions different from, or more liberal than, those prescribed in the statute or statutes.' " *Moore v. State Farm Mut. Auto. Ins. Co.*, 196 Ga. App. 755, 757 (397 SE2d 127) (1990). Peachtree's argument does not support deviation from our holding in *Federal* and the Supreme Court's ruling in *Green-*

*wood*. We simply cannot agree with Peachtree that liability insurance against punitive damages is forbidden in this state.

We also note Peachtree's reliance on *Roman*, supra, to argue that insuring against punitive damages contravenes public policy. *Roman* does state that "allowing punitive damages to be awarded against an insurance company can serve no deterrent function because the wrongdoer is not the person paying the damages." (Citation and punctuation omitted.) *Roman*, supra at 222. But Peachtree fails to point out in its appellate brief that after reciting this language, this Court in *Roman* went on to recognize the deterrent effect of insuring against punitive damages in the liability coverage, as opposed to UM coverage, context. We stated that "at least some relationship to deterrence is possible in the liability insurance area, because it is the tortfeasor *insured's* premiums which would be raised to cover the carrier's payout." (Emphasis in original.) Id. *Roman* therefore is not authority for judicially imposing a public policy ban on insurability of punitive damages.

*Judgment reversed. McMurray, P. J., Ruffin and Eldridge, JJ., concur. Andrews, C. J., Birdsong, P. J., and Beasley, J., dissent.*

BEASLEY, Judge, dissenting.

I respectfully dissent.

First, the majority opinion reaches beyond the sole issue in this case and rules that the insurance policy covers punitive damages. Lunceford, defendant in this declaratory judgment action, did not move for summary judgment, the trial court did not deny summary judgment to Lunceford, his entitlement to summary judgment was not briefed below, and he does not assert on appeal that he is entitled to summary judgment. His enumeration of error is that "the trial court erred in granting summary judgment to Appellee, Peachtree Casualty Insurance Company." Yet the majority opinion concludes that "the phrase 'because of bodily injury or property damages' must be construed against Peachtree as providing coverage for punitive damages" and that "we must continue to interpret the policy in favor of the insured." The majority in effect rules that Lunceford is entitled to summary judgment.

But issues not raised and ruled on by the trial court are not decided in this Court. *Ford Motor Co. v. Tippins*, 225 Ga. App. 128, 130 (1) (483 SE2d 121) (1997); *Butler v. State*, 172 Ga. App. 405, 406-407 (1) (323 SE2d 628) (1984). We do not create and then rule on cross-motions for summary judgment.

At most in this case, Lunceford would be entitled to raise the issue in the trial court if this case were properly reversed, that is, if Peachtree is not entitled to summary judgment.

The second reason for this dissent is that the policy does not

cover punitive damages. The trial court correctly applied the rules of interpretation for contracts as found in OCGA § 13-2-2 and came to this conclusion. The undisputed facts support it.

"The cardinal rule of construction is to ascertain the intention of the parties." OCGA § 13-2-3; *Irvin v. Laxmi, Inc.*, 266 Ga. 204, 205 (1) (467 SE2d 510) (1996); *Hull v. Lewis*, 180 Ga. 721 (180 SE 599) (1935). Parol evidence outside the four corners of the contract itself may explain a contract, by way of proving the attendant and surrounding circumstances, when there is ambiguity in the terms. OCGA § 13-2-2 (1). Immediately above the insured's signature on the application for insurance in a box marked "APPLICANT'S STATE-MENT — READ BEFORE SIGNING," there is a paragraph designated "PUNITIVE DAMAGES." Therein is the statement, quoted in part in the majority opinion, that the application does not include a request for punitive damages, explaining when and why punitive damages can be awarded in cases in general, and concluding with the information: "Punitive damages are damages which may be awarded above the actual costs of: (1) Repairing/replacing other people's property; or (2) the actual medical expenses and pain and suffering that you might accidentally cause in an accident." In the portion of the application designated "COVERAGE & RATING" and "PREMIUMS MUST BE SHOWN HERE," there is no listing for punitive damages coverage or a punitive damages premium.

It was thus made abundantly clear that punitive damages are a category separate from the two covered categories described, that the policy would not cover punitive damages, and thus that the premium charged for the policy, as specified immediately below Brown's signature, did not include such coverage.

The policy itself was in conformity with this and plainly stated, in straightforward fashion, what was covered. The whole contract is to be examined in arriving at the construction of any part. OCGA § 13-2-2 (4).

In the middle of the front page, whereon all the particulars with respect to this specific policy are shown, it is stated: "THERE IS NO COVERAGE PROVIDED UNDER THIS POLICY UNLESS A SPE-CIFIC PREMIUM CHARGE IS SHOWN BELOW." Charges are listed for four categories of coverage: "Bodily injury Liability," "Property Damages Liability," "Damage to your auto — other than Collision," and "Damage to your auto — Collision." There is nothing for punitive damages.

The provision quoted at the outset of Division 1 of the majority opinion constitutes the insurer's promise to pay. It is near the beginning of "Part I — LIABILITY TO OTHERS," which starts out by naming the types of coverage included: "Coverage A — Bodily Injury. Coverage B — Property Damage." In the quoted provision, the words

"bodily injury" and "property damage" are in bold print. In the definitions portion of the policy on the first narrative page of the policy, "Bodily Injury" is defined as meaning "bodily harm to a person and sickness, disease or death that results from it." "Property Damage" is defined as meaning "damage to or destruction of tangible property." "Accident," as used in the provision, is defined as meaning "an unexpected and unintended event that causes bodily injury or property damage and arises out of the ownership, maintenance or use of a car." Again, the words "bodily injury" and "property damage" are in bolder print.

There is no mention anywhere of punitive damages. Such did not have to be listed among the "Exclusions" because punitive damages are not part of bodily injury damages or property damages in the first place. Indeed, such an exclusion from either one of these two categories would be out of place. Explicitly covered were only those monetary damages which were related to bodily injury and property damage. Monetary damages related to anything else were obviously not covered. Punitive damages are for "something more" than damages for bodily injury and property damage. See *Uniroyal Goodrich Tire Co. v. Ford*, 218 Ga. App. 248, 254 (3) (b) (461 SE2d 877) (1995), rev'd on other grounds, *Ford v. Uniroyal Goodrich Tire Co.*, 267 Ga. 226 (476 SE2d 565) (1996).

Punitive damages relate to the tortfeasor's lack of respect for others' well-being, as described in OCGA § 51-12-5.1 (b), the statute authorizing them in limited circumstances. They are to punish the wrongdoer, and they constitute an award beyond full compensation for the injuries and damage inflicted on the victim. As stated in *Roman v. Terrell*, 195 Ga. App. 219, 221 (2) (393 SE2d 83) (1990), "[p]unitive damages are not awarded 'because of' the bodily injury or property damage sustained by the victim, but rather 'because of' some aspect of the tortfeasor's conduct which caused the victim's loss: wilfulness, perhaps, or some other aggravating circumstance which prompts the desire to punish the wrongdoer and prevent similar conduct in the future."

Whether utilizing this logic in statutory interpretation, as in *Roman*, or in contract construction, as here, the result is the same. It is a matter of the meaning of common English words used. "Because of" was equated with "on account of" by the United States Supreme Court in *O'Gilvie v. United States*, 519 U. S. ___ (117 SC 452, 136 LE2d 454) (1996), in describing the meaning of "on account of." The Court wrote that other ways of putting the same relational concept, again drawing on the dictionary, are "for the sake of" or "by reason of." That case dealt with whether punitive damages arise "on account of" personal injury.

Punitive damages are not awarded "for the sake of" or "by reason

of" or "on account of" bodily injury or property damage. This means that they are not awarded "because of" bodily injury or property damage either. If Brown is found legally liable for punitive damages, she is not "legally liable" for punitive damages "because of bodily injury [or] property damage" but rather because of her reprehensibly irresponsible conduct. The policy covers only compensation.

The trial court's order granting summary judgment to Peachtree should be affirmed.

I am authorized to state that Chief Judge Andrews and Presiding Judge Birdsong join in this dissent.

DECIDED DECEMBER 5, 1997 — RECONSIDERATION DENIED DECEMBER 18, 1997 

*Freedman & Sinowski, Marc H. Bardack*, for appellant.
*Chambers, Mabry, McClelland & Brooks, Douglas F. Aholt, Beth S. Reeves*, for appellee.
*Dawson & Huddleston, Patrick A. Dawson*, amicus curiae.